No. 2--05--1209     Filed:  6-5-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re APPLICATION OF THE COUNTY TREASURER AND ex officio COUNTY COLLECTOR, for Judgment and Order of Sale Against Real Property Returned Delinquent for Nonpayment of General Taxes for the Year 1998 and Prior Years | ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Carroll County.<br><br>Nos. 01--TX--9, 01--TX--10, 01--TX 13, 02--TX--26, 02--TX--29, 03--TX--10, 03--TX--11, 03--TX--12, 03--TX--13, 03--TX--14 |
| (AAM/US Bank LLC, Petitioner-Appellant, v. The Lake Carroll Association, Respondent-Appellee). | ) ) ) | Honorable Val Gunnarsson, Judge, Presiding. |

JUSTICE KAPALA[1] delivered the opinion of the court:

Petitioner, AAM/US Bank LLC , appeals from a November 8, 2005, order of the circuit court of Carroll County denying its motion for summary judgment and granting that of respondent, the Lake Carroll Association.  For the reasons that follow, we affirm in part,  reverse in part, and remand.

---

[1]Justice Kapala participated in this appeal and authored the opinion, but has since been appointed as United States District Judge for the Northern District of Illinois, Western Division. Our supreme court has held that the departure of an authoring judge prior to the filing date will not affect the validity of a decision so long as the remaining two judges concur.  Kinne v. Duncan, 383 Ill. 110, 113-14 (1943).

I. BACKGROUND

On August 5, 2002, petitioner filed a petition for tax deed for 16 parcels of real estate in Carroll County. On February 11, 2003, the trial court granted the petition and issued petitioner an "Order for Issuance of Tax Deed" (Tax Deed Order) for 15 of the 16 properties.[2] Each order required "that the Carroll County Clerk do forthwith make, execute, and deliver to said Petitioner upon surrender to said County Clerk of the Certificate of Purchase delivered to the original purchaser, a good and sufficient deed conveying to said Petitioner" the real estate described in the order.

Following the trial court's February 11, 2003, orders, petitioner was issued tax deeds for the properties on various dates, beginning on July 3, 2003. Petitioner obtained other deeds on July 25, 2003, October 1, 2003, October 14, 2003, and November 4, 2003. On the same dates these deeds were issued, they were recorded.

On September 10, 2003, petitioner filed a motion for declaratory judgment concerning respondent's claims for homeowners' assessment fees on the 15 properties. In its motion, petitioner requested a declaration that it would not be responsible for the homeowners' assessment fees until it submitted each order to the county clerk, who would then issue a deed and record the deed with the county recorder. In response, respondent argued that petitioner was obligated to pay assessment fees on the properties as of February 11, 2003, when the Tax Deed Orders were entered.

On October 29, 2003, the trial court denied petitioner's motion for declaratory judgment and found that the properties were subject to homeowners' assessment fees that accrued since February

---

[2] The tax sale certificate of purchase for the 16th property was redeemed prior to the expiration of the period of redemption, and thus, the trial court dismissed petitioner's claim against that property.

11, 2003, the date of the Tax Deed Orders. However, on May 14, 2004, the trial court granted petitioner's motion to reconsider and vacated its October 29, 2003, order. The trial court also granted petitioner's motion for leave to file an amended motion for declaratory judgment as a writ of assistance. In addition, the trial court granted petitioner's motion to consolidate the pending case regarding the 15 properties discussed above (No. 02--TX--29) with petitioner's other pending tax cases involving properties subject to respondent's assessment fees (No. 01--TX--9, No. 01--TX--10, No. 01--TX--13, No. 02--TX--26, No. 03--TX--10, No. 03--TX--11, No. 03--TX--12, No. 03--TX--13, No. 03--TX--14).[3]

On June 15, 2004, petitioner filed its amended motion, entitled "Amended Application in Writ of Assistance for Declaratory and Other Relief; and Claim for Unjust Enrichment." In its amended application, petitioner sought a declaration that it was not liable for any of respondent's assessment fees, past, present, or future, because the assessment obligations were not covenants running with the land and the covenant of assessments contained in the "Declaration of Restrictive Covenants, Lake Carroll" (Declaration) violated the rule against perpetuities. Petitioner also alleged that even if respondent could properly charge assessment fees upon the properties at issue, petitioner was not liable for the assessment fees that accrued between the date of the Tax Deed Orders and the dates the deeds were recorded. Petitioner also requested that any and all assessments it paid to respondent for the properties at issue be returned with prejudgment and postjudgment interest.

---

[3]The trial court issued orders for issuance of tax deed in these cases on November 28, 2001 (No. 01--TX--9, No. 01--TX--10, No. 01--TX--13), February 11, 2003 (No. 02--TX--26), May 4, 2004 (No. 03--TX--10, No. 03--TX--11, No. 03--TX--12, No. 03--TX--13), and May 7, 2004 (No. 03--TX--14). No tax deeds for these properties are found in the record.

Petitioner attached the Declaration to its amended application. The Declaration contains the covenants and restrictions that pertain to the land within the Lake Carroll Development. The Declaration expressly authorizes respondent to "levy annual assessments against all Lots in the Development." The Declaration states that any unpaid assessments may become a lien on the property. The Declaration also provides that its terms are intended "to operate as covenants running with the land for the benefit of each and all other such Lots and Parcels in the Development and their respective owners, present and future." The Declaration is dated May 15, 1972, and states that it shall exist "until January 1, 1995, after which the same shall be [automatically] extended for successive periods of ten (10) years each."

On July 11, 2005, respondent moved for summary judgment, arguing that there was no genuine issue of material fact and that petitioner's amended application for declaratory judgment and claim of unjust enrichment should be denied as a matter of law. On August 29, 2005, petitioner also filed a motion for summary judgment. On November 8, 2005, the trial court granted respondent's motion for summary judgment and denied petitioner's motion for summary judgment. The trial court held that the homeowners' assessments were covenants running with the land and did not run afoul of the rule against perpetuities. The trial court further held that once a person obtains an order for the issuance of a tax deed, he has the right to obtain a tax deed and record it that day, and his liability for the assessments relates back to the date of the order for the issuance of the tax deed. Petitioner now appeals the order of the trial court. The trial court has stayed its judgment pending the mandate of this court.

## II. DISCUSSION

Although petitioner separates its argument on appeal into five different issues, we believe these issues condense into two basic contentions. First, petitioner contends that it is not liable for any past, present, or future assessments on the properties, even following the recording of its tax deeds, because (1) the tax deeds were purchased free and clear of any restrictions and assessments, and any assessment fees sought by respondent were eliminated upon issuance of the tax deeds; (2) respondent has waived or is estopped from collecting assessments, due to its failure to pursue its right to those assessments at the tax deed proceedings; and (3) the covenant of assessments in the Declaration is void under the rule against perpetuities. Second, petitioner contends that even if it is liable for assessment fees, the trial court incorrectly chose the date of the Tax Deed Orders, rather than the dates of recording of the tax deeds, as the date the assessments began to accrue. Based on these two contentions, petitioner also contends that respondent owes petitioner prejudgment and postjudgment interest and was unjustly enriched by petitioner's payment of the assessments. We will address the second issue first, as it will help to illustrate when title to the properties vested in petitioner. The nature and extent of the titles are relevant to the relative merits of the first issue.

"Summary judgment is proper if, when viewed in the light most favorable to the nonmoving party, the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Allegis Realty Investors v. Novak, 223 Ill. 2d 318, 330 (2006). When parties file cross-motions for summary judgment, they agree that no material issue of fact exists and only a question of law is involved. Board of Education v. Cunningham, 346 Ill. App. 3d 1027, 1030 (2004). In such a case, we review de novo the trial court's decision. Cunningham, 346 Ill. App. 3d at 1030.

As a preliminary matter, we must address respondent's motion to strike the "Nature of the Case" section of petitioner's brief. Respondent argues that this section of petitioner's brief is not a simple introductory paragraph but rather is composed of self-serving, conclusory, and argumentative statements. Petitioner responds that respondent's motion to strike should be denied because it was not filed separately pursuant to Supreme Court Rule 361 (210 Ill. 2d R. 361), and that, despite being 4½ pages long, the "Nature of the Case" section was not too long compared with the length of its brief.

Supreme Court Rule 341(h)(2) states that an appellant's brief should contain:

"(2) An introductory paragraph stating (i) the nature of the action and of the judgment appealed from and whether the judgment is based upon the verdict of a jury, and (ii) whether any question is raised on the pleadings and, if so, the nature of the question.

                            Illustration:

'This action was brought to recover damages occasioned by the alleged negligence of the respondent in driving his automobile. The jury rendered a verdict for the plaintiff upon which the court entered the judgment from which this appeal is taken. No questions are raised on the pleadings.' " 210 Ill. 2d R. 341(h)(2).

We agree with respondent that petitioner's 4½-page "Nature of the Case" section far exceeds the concept of an introductory paragraph and violates the direction of Rule 341(h)(2). However, " '[t]he striking of an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the alleged violations of procedural rules interfere with or preclude review.' " In re Detention of Powell, 217 Ill. 2d 123, 132 (2005), quoting Moomaw v. Mentor H/S, Inc., 313 Ill. App. 3d 1031,

1035 (2000). Although excessive, petitioner's "Nature of the Case" section does not interfere with our review, and therefore, we decline to strike this portion of the brief. Consequently, we need not consider petitioner's argument that respondent cannot raise a motion to strike in its appellee brief.

A. Commencement of Obligation to Pay Assessments

Petitioner contends that the trial court erred in holding that the time frame for accrual of assessments relates back to the date on which the trial court entered the Tax Deed Orders. Petitioner contends that the assessments charged by respondent accrue beginning "no earlier than the date of filing the tax deed." Respondent asserts that petitioner's obligation to pay the assessments arose February 11, 2003, when the trial court issued the Tax Deed Orders.

Initially, we note that both parties unnecessarily focus much of their arguments on whether the recording of the deeds marks the beginning of the accrual of the assessments. Each tax deed in the record was recorded on the same date the clerk issued the deed. Consequently, because each deed was issued and recorded on the same day, any argument distinguishing the date of issuance from the date of recording is unavailing.[4] Rather, the pivotal issue is whether respondent can collect

---

[4]We note that the record contains the tax deeds issued and recorded only in case number 02--TX--29. Although the Tax Deed Orders in the consolidated cases are in the record, neither the deeds nor their dates of issuance or recording are in the record. Because the record does not show whether the tax deeds issued in the consolidated cases were issued on a different date from that on which they were recorded, we acknowledge that this distinction could affect those cases. However, it is the responsibility of the appellant to provide a complete record to the court. Corral v. Mervis Industries, Inc., 217 Ill. 2d 144, 156 (2005). Doubts that arise from the incompleteness of the record will be resolved against the appellant. Foutch v. O'Bryant, 99 Ill. 2d 389, 392 (1984). Accordingly, because

assessments accruing from the date of the Tax Deed Orders rather than the dates that the deeds were issued and recorded. Because we conclude that respondent cannot collect assessments prior to the dates of issuance of the tax deeds, we need not address the effect of the recording dates.

"[T]he obligation to pay assessments is a covenant that runs with the land and is binding only on title holders." Newport Condominium Ass'n v. Talman Home Federal Savings & Loan Ass'n of Chicago, 188 Ill. App. 3d 1054, 1059 (1988); Illinois Ry. Museum, Inc. v. Siegel, 132 Ill. App. 2d 77, 82 (1971); see 35 ILCS 200/22-65 (West 2002). Thus, in order to determine when the assessments began to accrue, we must first determine when petitioner gained title to the properties. Two sections of the Property Tax Code (Code) (35 ILCS 200/1 et seq. (West 2002)) are particularly helpful to this determination. Section 22--40 states that once the redemption period expires, the property has not been redeemed, and the petitioner has complied with all the provisions of law entitling him or her to a deed, "the court shall so find and shall enter an order directing the county clerk on the production of the certificate of purchase and a certified copy of the order, to issue to the purchaser or his or her assignee a tax deed." 35 ILCS 200/22--40 (West 2002). Section 22--65 provides that "[a] tax deed executed by the county clerk under the official seal of the county shall be recorded in the same manner as other conveyances of property, and vests in the grantee, his or her

_____

nothing in the record shows any apparent controversy as to whether the assessments begin to accrue on the date of issuance or the date of recording, we will not render an opinion as to this issue. Barth v. Reagan, 139 Ill. 2d 399, 419 (1990) ("Courts of review also ordinarily will not consider issues where they are not essential to the disposition of the cause or where the result will not be affected regardless of how the issues are decided").

heirs and assigns, the title of the property therein described without further acknowledgment or evidence of the conveyance."   35 ILCS 200/22--65 (West 2002).

" 'In interpreting a statute, a court's primary goal is to ascertain the intent of the legislature.' [Citations.] 'The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning.' [Citation.]  If the legislative intent can be discerned from the statutory language, this [approach] must prevail, and no resort to other tools of statutory construction is necessary." Mattis v. State Universities Retirement System, 212 Ill. 2d 58, 76 (2004); People v. Burke, 362 Ill. App. 3d 99, 105 (2005).  Where the language of the statute is clear, we may not read into it exceptions that the legislature did not express and we will give it effect as written. Elementary School District 159 v. Schiller, 221 Ill. 2d 130, 144 (2006).

Section 22--40 specifically provides that the court's order allows the clerk to issue a tax deed if, following the issuance of the court's order, the party presents the county clerk with the certificate of purchase and a certified copy of the order.  35 ILCS 200/22--40 (West 2002).  This language suggests that the order itself does not amount to the issuance of the deed, but that steps must be taken before the deed is issued.  Moreover, section 22--40 also states that it is the county clerk that issues the tax deed.  35 ILCS 200/22--40 (West 2002).  Thus, while section 22--40 authorizes the court to enter an order for issuance of a tax deed, it plainly states it is the county clerk that issues the tax deed. See 35 ILCS 200/22--40 (West 2002).  Moreover, section 22--65 specifically prescribes that a tax deed executed by the clerk "vests in the grantee, his or her heirs and assigns, the title of the property." 35 ILCS 200/22--65 (West 2002).  Accordingly, the plain language of the above statutes provides that title is acquired at the time the county clerk issues the tax deed, and not at the time the order for issuance of the tax deed is entered.

The effect of the above statutes is also consistent with our supreme court's holding in <u>Atkins</u> <u>v. Hinman</u>, 7 Ill. 437 (1845). In <u>Atkins</u>, the defendant challenged the title that the plaintiff received at a sheriff's sale for taxes. Atkins, 7 Ill. at 437. Our supreme court held that three criteria must be met to prove the validity of a title purchased at a tax sale: (1) a valid judgment against the land, (2) a valid precept authorizing the sheriff to make the sale, <u>and</u> (3) proper conveyance of the land from the sheriff. Atkins, 7 Ill. at 448. Thus, our supreme court recognized that a conveyance is an essential part of vesting title, even when a court has authorized the sale. See Atkins, 7 Ill. at 448. More recently, in Illinois Ry. Museum, Inc., 132 Ill. App. 2d at 82, the appellate court also noted that "[a] certificate of sale does not pass title to the purchaser until the passing of the redemption period and the issuance of a tax deed." (Emphasis added.)

Therefore, in this case, petitioner obtained title to the properties on the days the tax deeds were issued by the clerk, not the days the court entered the Tax Deed Orders. Accordingly, because assessment fees can be collected only from titleholders, petitioner cannot be liable for fees accruing on its properties before the dates the deeds were issued by the clerk.

Furthermore, although the trial court pointed out that a tax deed purchaser may obtain a tax deed on the day the order for issuance of the tax deed is entered, we do not believe that the mere ability to acquire the tax deed endows the tax deed purchaser with the obligations and liabilities of a titleholder. In this regard, this case is similar to one faced by the First District, in <u>Newport</u>, 188 Ill. App. 3d at 1054. In <u>Newport</u>, the defendant successfully bid for a certificate of purchase of a foreclosed property. <u>Newport</u>, 188 Ill. App. 3d at 1056. The period of redemption expired six months thereafter. <u>Newport</u>, 188 Ill. App. 3d at 1056. However, the defendant did not exchange his certificate of purchase for the sheriff's deed until almost two years after the redemption period had

ended. Newport, 188 Ill. App. 3d at 1056. Two months after the defendant received the deed to the property, the condominium association filed a complaint against the defendant to foreclose on a lien for the condominium assessments that had accrued on the property in the two years following the expiration of the period of redemption. Newport, 188 Ill. App. 3d at 1056. The trial court entered an order in favor of the condominium association, holding that the defendant had constructive title of the property from the time the redemption period expired. Newport, 188 Ill. App. 3d at 1057.

The appellate court reversed, holding that both the expiration of the redemption period and the conveyance of the deed are necessary to pass title. Newport, 188 Ill. App. 3d at 1059. The appellate court noted that the defendant had no legal obligation to exchange the certificate of purchase for the tax deed. The court also held that the certificate of purchase did not convey title and was merely evidence of the right to obtain title once the redemption period had expired. Newport, 188 Ill. App. 3d at 1059. Thus, the court concluded that the defendant was liable only for condominium assessments that accrued after he exchanged the certificate of purchase for the deed. Newport, 188 Ill. App. 3d at 1059.

Although the case at bar concerns a tax deed purchase and not a foreclosure sale, we find the facts and analysis of Newport analogous to this case. Like the defendant in Newport, petitioner possessed documents, the certificates of purchase and certified copies of the orders, which conveyed the right to obtain title to the properties. See 35 ILCS 200/22--40 (West 2002). However, petitioner was under no legal obligation to exchange those documents for the tax deeds. See 35 ILCS 200/22--85 (West 2002). Moreover, petitioner did not obtain the titles to the properties until the clerk conveyed the deeds to it. See 35 ILCS 200/22--65 (West 2002). Finally, although a court order allowing for issuance of a tax deed was not present in Newport, the Tax Deed Orders indicated only

that the trial court found that the requisite conditions for issuance of the deeds had been met. Each Tax Deed Order, by requiring the clerk to issue a tax deed to the purchaser upon production of the certificate of purchase, implied that the order itself conveyed neither deed nor title to the purchaser. See 35 ILCS 200/22--40 (West 2002).

Thus, consistent with Newport, we find that petitioner cannot be liable for any assessments that accrued prior to the dates upon which the clerk issued petitioner deeds to the properties. Therefore, we reject the trial court's finding that petitioner's liability for assessments relates back to the date of the entry of the Tax Deed Orders. Accordingly, we reverse this portion of the trial court's order granting summary judgment for respondent and denying it for petitioner.

B. Existence of Obligation to Pay Assessment Fees

The following analysis relates to petitioner's first contention that it had no obligation to pay any assessment fees, even after it acquired title through the issuance of the tax deeds. We reject all of petitioner's arguments regarding this contention.

1. Section 22--70

Petitioner first argues that any right respondent had to assessment fees was eliminated by the issuance of petitioner's tax deeds. Section 22--55 of the Code provides that a tax deed conveys merchantable title and states that "[t]his Section shall be liberally construed so that tax deeds shall convey merchantable title." 35 ILCS 200/22--55 (West 2002). In light of the requirement of merchantable title, a tax deed issued pursuant to a judicial process grants to the purchaser a new and independent title, free and clear from previous titles and claims, and any prior lien on a property becomes void upon issuance of a tax deed. Crawford v. Love, 243 Ill. App. 3d 977, 980 (1993);

Lincoln Park Federal Savings & Loan Ass'n v. DRG, Inc., 175 Ill. App. 3d 176, 178 (1988); see also In re Application of Olmstead, 269 Ill. App. 3d 821, 823 (1995); Pappmeier v. Green Tree Acceptance, Inc., 193 Ill. App. 3d 824, 826 (1990). However, section 22--70 of the Code (35 ILCS 200/22--70 (West 2002)) identifies several preexisting interests that are not eliminated by tax deed.

Section 22--70 states:

"A tax deed issued with respect to any property sold under this Code shall not extinguish or affect any conservation right, easement, covenant running with the land or right-of-way for water, sewer, electricity, gas, telephone or other public service use which was created, on or over that real property before the time that property was sold under this Code and which is evidenced either by a recorded instrument or by wires, poles, pipes, equipment or other public service facilities. When the property described in a tax deed issued under this Code is a dominant or a servient tenement with respect to any private easement or easements, created in good faith expressly or by operation of law for the benefit of a dominant tenement or tenements, with respect to the easement or easements the tax deed shall have the same effect as a deed of conveyance made by the owner of the property to the tax deed grantee, just prior to the issuance of the deed." 35 ILCS 200/22--70 (West 2002).

Petitioner makes two arguments as to why section 22--70 does not apply to the assessment fees in this case. First, petitioner argues that the assessment fees at issue are not covenants running with the land, and second, petitioner argues that section 22--70 applies only to public service uses.

### a. Covenant Running with the Land

Petitioner argues that because homeowners' association assessments are not specifically listed in section 22--70, these assessments are eliminated upon issuance of a tax deed. However, although

the plain language of section 22--70 does not specifically refer to the obligation to pay homeowners' assessment fees, section 22--70 does protect covenants running with the land. 35 ILCS 200/22--70 (West 2002). Thus, if the assessment fees at issue are covenants running with the land under section 22--70, as respondent asserts, the plain meaning of section 22--70 precludes them from elimination by tax deed. Petitioner argues that the assessment fees do not run with the land because they do not touch and concern the land, and there is no privity of ownership between a prior owner of a property and the purchaser of a tax deed. Petitioner also distinguishes negative and positive covenants and asserts that section 22--70 does not protect positive covenants that run with the land.

In Streams Sports Club, Ltd. v. Richmond, 99 Ill. 2d 182 (1983), our supreme court recognized three characteristics of covenants running with the land that were first outlined by New York courts. Streams Sports Club, 99 Ill. 2d at 188. In order for a covenant to run with the land, New York courts require that (1) the parties intend the covenant to run with the land, (2) the covenant touches and concerns the land, and (3) there was privity of estate between the party claiming the benefit and the party resting under the burden of the covenant. Streams Sports Club, 99 Ill. 2d at 188, citing Neponsit Property Owners' Ass'n v. Emigrant Industrial Savings Bank, 278 N.Y. 248, 255, 15 N.E.2d 793, 795 (1938). Although our supreme court never expressly adopted this test, it applied these three factors to determine that association fees used to support a gym next to a condominium complex ran with the land. Streams Sports Club, 99 Ill. 2d at 188-90. Several appellate court cases have since adopted this three-part test. United States Fidelity & Guaranty Co. v. Old Orchard Plaza Ltd. Partnership, 284 Ill. App. 3d 765, 777 (1996); Drayson v. Wolff, 277 Ill. App. 3d 975, 983 (1996); In re Estate of Wallis, 276 Ill. App. 3d 1053, 1056 (1995); Derby Meadows Utility Co. v. Inter-Continental Real Estate, 202 Ill. App. 3d 345, 362 (1990); Nassau

Terrace Condominium Ass'n v. Silverstein, 182 Ill. App. 3d 221, 224 (1989); St. Paul Federal Bank for Savings v. Wesby, 149 Ill. App. 3d 1059, 1063 (1986). Accordingly, we examine whether respondent's covenant of assessments meets this test.

First, we note that both parties concede that the properties at issue are subject to the Declaration. Petitioner further concedes that pursuant to the Declaration, the original grantor and grantee of the properties intended the covenant of assessments to run with the land. Section VII of the Declaration states that respondent may levy annual assessments against all lots in the development. The Declaration also states that its provisions "are intended to *** operate as covenants running with the land for the benefit of each and all other such Lots and Parcels in the Development and their respective owners, present and future." Therefore, the parties to the Declaration intended specific provisions, including the possibility of annual assessments, to run with the land. Thus, the first factor of a covenant running with the land is met in this case.

As to the factor of touch and concern, petitioner argues that the covenant of assessments does not touch and concern the land because "old covenants of the prior chain of title cannot 'touch and concern' a new title which is 'independent, free and clear etc.' " Similarly, in the trial court, petitioner alleged that the covenant of assessments was not "in touch and concern with the [petitioner's] *** Tax Deeds."

Petitioner's argument is misguided. "A covenant touches and concerns the land if it 'affects the use, value and enjoyment *** of the property.' " United States Fidelity & Guaranty Co., 284 Ill. App. 3d at 777, quoting Nassau Terrace Condominium Ass'n, 182 Ill. App. 3d at 225. Thus, this requirement concerns the covenant's relationship to the land, not whether the covenant touches and concerns the title of a successor in interest. See Streams Sports Club, 99 Ill. 2d at 188. In Streams

Sports Club, our supreme court held that an agreement to pay fees for a recreational facility, which was adjacent to a condominium complex and part of a common building plan, touched and concerned the land. Streams Sports Club, 99 Ill. 2d at 189. Similarly, in Wesby, the First District held that where an agreed assessment fee is, in part, for repair of the common areas, it also touches and concerns the land. Wesby, 149 Ill. App. 3d at 1063.

In this case, the Declaration states that "pursuant to the powers granted to it in its Articles and By-Laws, the [Lake Carroll] Association is hereby expressly authorized and empowered to levy annual assessments against all Lots in the Development." The Declaration does not specify for what purpose the assessments could or would be used. In addition, although the Declaration refers to respondent's articles and bylaws, these are not part of the record in this case. Furthermore, we find no evidence in the record as to the purpose of the assessment fees. As a result, it is difficult to determine whether the original covenant of assessments was one that did not touch and concern the land.

However, "[t]he burden of proof in a civil proceeding generally rests on the party seeking relief and is always borne by the plaintiff in an action for declaratory judgment." Muhammad v. Muhammad-Rahmah, 363 Ill. App. 3d 407, 414 (2006). Petitioner failed to demonstrate in any way that the assessments referred to in the Declaration are not covenants that affect the use, value, or enjoyment of the land. Instead, petitioner alleged and argued that the covenant did not touch or concern the successor's title. Accordingly, we cannot find the trial court erred in rejecting petitioner's contentions.

Finally, in regard to the factor of privity, petitioner argues there is no privity of estate between petitioner and the prior property owner because petitioner took the titles pursuant to a

statutory procedure and not a grant in privity of estate and because a tax deed creates a new chain of title separate from a previous owner of a property.

According to Streams Sports Club, in order for a covenant to run with the land, privity of estate must exist between the party claiming the benefit and the party resting under the burden of the covenant. Streams Sports Club, 99 Ill. 2d at 188. "[P]rivity exists when the latter user has succeeded to the interest of the earlier user by inter vivos conveyance, by descent, by devise, or by involuntary conveyance." Roller v. Logan Landfill, Inc., 16 Ill. App. 3d 1046, 1053 (1974). Petitioner does not contest the privity between the original grantor of the property and the property owners in the association. Nor does petitioner challenge respondent's privity of estate with the original beneficiaries of the covenant. Rather, petitioner argues that its tax deeds severed the line of privity of estate between the original owners of the burdened properties and petitioner and that, therefore, the covenant of assessments cannot run with petitioner's lands.

However, we need not decide this issue, because, even if there is no privity of estate between a tax deed purchaser and the previous owner of the land, section 22--70 requires that any preexisting covenant running with the land continues to run after the tax deed is issued. "The primary objective of this court when construing the meaning of a statute is to ascertain and give effect to the intent of the legislature." DeLuna v. Burciaga, 223 Ill. 2d 49, 59 (2006). "Further, when undertaking the interpretation of a statute, we must presume that when the legislature enacted a law, it did not intend to produce absurd, inconvenient or unjust results." Vine Street Clinic v. HealthLink, Inc., 222 Ill. 2d 276, 282 (2006).

Section 22--70 specifically enumerates covenants running with the land as interests that are not extinguished by tax deed. 35 ILCS 200/22--70 (West 2002). Accordingly, even if under the

common law a lack of privity would prohibit a preexisting covenant from running with the land after the issuance of a tax deed, the plain language of section 22--70 allows any covenant that would otherwise run with the land and that exists at the time of the issuance of the tax deed to continue to run with the land. Moreover, under petitioner's logic, if section 22--70 preserved only covenants that would naturally run with the land following a tax deed purchase, and there was no privity of estate between any previous property owner and the tax deed purchaser, no covenant running with the land would exist following the issuance of the tax deed. This would conflict with the plain meaning of the statute and lead to absurd results. Therefore, we reject petitioner's argument.

Because section 22--70 specifically refers to preexisting interests that can be "extinguished" following issuance of a tax deed (35 ILCS 200/22--70 (West 2002)), whether a covenant is one "running with the land" pursuant to section 22--70 is determined by the nature of the covenant existing prior to the issuance of the tax deed. In this case, petitioner does not dispute that the covenant of assessments had run with the land and that the previous property owner was in privity with the original owner of the burdened estate. Therefore, because the covenant of assessments was a covenant running with the land and existed prior to tax sale, pursuant to section 22--70, it was not extinguished by the issuance of the tax deeds.

Petitioner also suggests that section 22--70 protects only negative covenants and not positive covenants to pay assessments, because negative covenants can run absent privity of estate. First, this argument fails because the plain language of section 22--70 does not distinguish between positive and negative covenants. Rather, section 22--70 plainly states that a "tax deed issued with respect to any property sold under this Code shall not extinguish or affect <u>any</u> conservation right, easement, covenant running with the land or right-of-way." (Emphasis added.) 35 ILCS 200/22--70 (West

2002). Moreover, Illinois courts have consistently held that covenants made between sellers and buyers of land run with the land when the covenants concern the land or the enjoyment of it. Fitch v. Johnson, 104 Ill. 111, 121 (1882); La Salle National Trust, N.A. v. Village of Westmont, 264 Ill. App. 3d 43, 73 (1994). Petitioner cites no Illinois case that makes a distinction between positive and negative covenants running with the land. In addition, in regard to the privity requirement, Streams Sports Club makes no distinction between positive and negative covenants in the rule it sets forth. See Streams Sports Club, 99 Ill. 2d at 188.

In light of this history, we find no reason to believe that the legislature intended to exclude covenants to pay assessment fees from the definition of covenants running with the land. Our supreme court has found that covenants to pay assessment fees are covenants running with the land. Streams Sports Club., 99 Ill. 2d at 188. "Where the language of the statute is clear, we may not read into it exceptions that the legislature did not express, and we will give it effect as written." Schiller, 221 Ill. 2d at 144. Therefore, we will not limit the application of section 22--70 to negative covenants, and we reject petitioner's argument that the covenant of assessments is not a covenant running with the land.

b. Public Service Use

Petitioner next asserts that the phrase "for water, sewer, electricity, gas, telephone or other public service use" in section 22--70 (35 ILCS 200/22--70 (West 2002)) limits the types of covenants running with the land that the section protects, and petitioner concludes that, because the assessment fees at issue are not for water, sewer, electricity, gas, telephone, or other public service use, they are not protected by section 22--70. In contrast, respondent argues that the phrase "for water, sewer, electricity, gas, telephone or other public service use" applies only to the types of "right-of-ways"

protected by section 22--70, and not to covenants running with the land. 35 ILCS 200/22--70 (West 2002).

Again, the best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. Mattis, 212 Ill. 2d at 76. The application of the phrase "for water, sewer, electricity, gas, telephone or other public service use" was recently considered by the Fifth District in SI Securities v. Bank of Edwardsville, 362 Ill. App. 3d 925 (2005). In that case, the plaintiff obtained a tax deed to a property in a subdivision and sought an order from the court declaring that restrictions governing the subdivision did not apply to the property. SI Securities, 362 Ill. App. 3d at 926. By their express terms, the restrictions were imposed upon the land, bound successive property owners, and automatically extended to future additions in the subdivision. SI Securities, 362 Ill. App. 3d at 926. The plaintiff argued that section 22--70 protected only utility and public use covenants from extinction because the phrase "water, sewer, electricity, gas, telephone or other public service use" modified the phrase "covenant running with the land." Because the covenants listed in the amended complaint were not utility or public use covenants, the plaintiff argued, they were extinguished when the tax deed was issued. SI Securities, 362 Ill. App. 3d at 928. The SI Securities court rejected the plaintiff's argument and reasoned that section 22--70 "clearly says that a tax deed shall not extinguish or affect any covenant running with the land" and that "[t]he phrase 'water, sewer, electricity, gas, telephone[,] or other public service use' is set apart from the other property rights and modifies only the term 'right-of-way,' which follows the word 'or,' as opposed to 'and.' " (Emphasis in original.) SI Securities, 362 Ill. App. 3d at 929-30. The court further reasoned that both the title of section 22--70, "Easements and covenants running with the land," and its language did not impart a restrictive application of the

statute toward easements and covenants running with the land. SI Securities, 362 Ill. App. 3d at 930. The court pointed out that a covenant or right-of-way can be a type of an easement, and a conservation right can be an easement or covenant, and that this redundant language within the statute indicates the legislature's intent to broaden the range of easements and covenants running with the land that survive a tax deed. SI Securities, 362 Ill. App. 3d at 930. Therefore, SI Securities held, the plain language of section 22--70 protected any covenant running with the land from extinction by tax deed. SI Securities, 362 Ill. App. 3d at 929. The SI Securities court also outlined several policy reasons that supported its interpretation. SI Securities, 362 Ill. App. 3d at 930-31.

We agree with the Fifth District's conclusion that section 22--70 applies to any covenant running with the land. The language of section 22--70 at issue is: "A tax deed issued with respect to any property sold under this Code shall not extinguish or affect any conservation right, easement, covenant running with the land or right-of-way for water, sewer, electricity, gas, telephone or other public service use ***." 35 ILCS 200/22--70 (West 2002). The word "or" is disjunctive. Schiller, 221 Ill. 2d at 145. Disjunctive connotes two different alternatives. Schiller, 221 Ill. 2d at 145. Thus, "[a]s used in its ordinary sense, the word 'or' marks an alternative indicating the various parts of the sentence which it connects are to be taken separately." Schiller, 221 Ill. 2d at 145. As a result, the word "or" preceding the phrase "right-of-way" indicates that the words prior to "or" are to be taken separately from the words that follow. See Schiller, 221 Ill. 2d at 145. Accordingly, the plain language of section 22--70 dictates that the words "covenants running with the land" are not modified by the phrase "for water, sewer, electricity, gas, telephone or other public service use." As a result, when the language of section 22--70 is given its plain and ordinary meaning, it reflects the intent of the legislature to protect any covenant running with the land from extinction by tax deed,

and not only those for water, sewer, electricity, gas, telephone, or other public service use. Therefore, we refuse to read into the statute further restrictions on covenants running with the land, and we reject petitioner's argument that the homeowners' assessments sought by respondent are not subject to section 22--70 because they do not relate to such public uses.

We also reject petitioner's argument that SI Securities conflicts with the Fifth District's decision in Killion v. Meeks, 333 Ill. App. 3d 1188 (2002), or the First District's decision in Crawford, 243 Ill. App. 3d 977. Both Killion and Crawford explored whether a claim of adverse possession was extinguished by the issuance of a tax deed. Killion, 333 Ill. App. 3d at 1193; Crawford, 243 Ill. App. 3d at 978. Both courts found that because the legislature had specifically enumerated interests that were not extinguished by tax deed, such as easements, covenants running with the land, and rights-of-way for water, sewer, electricity, gas, telephone, or other public service uses, other interests not mentioned, such as interests gained by adverse possession, were not protected. Killion, 333 Ill. App. 3d at 1193; Crawford, 243 Ill. App. 3d at 978.

Petitioner implies that, contrary to Killion and Crawford, SI Securities extended the interests surviving tax deed to include those not enumerated by statute. This is simply not the case. Both SI Securities and the case at bar concern covenants running with the land, which are enumerated in section 22--70 of the Code. Although the statute does not specifically identify each type of covenant running with the land that is protected, our supreme court has recognized that both restrictions on the use of land (Wise v. Wouters, 288 Ill. 29, 32-33 (1919)) and affirmative obligations to pay assessment fees (Streams Sports Club, 99 Ill. 2d at 190-91) can be covenants running with the land, provided that they meet certain criteria. Therefore, Killion and Crawford are inapposite to both this

case and SI Securities, as they concern interests not specifically addressed by section 22--70. See Killion, 333 Ill. App. 3d at 1193; Crawford, 243 Ill. App. 3d at 978

Furthermore, we reject petitioner's argument that the policy reasons articulated by the SI Securities court do not apply in this case. First, because the language of the statute is unambiguous, we need not resort to a discussion of policy to determine the legislature's intent. People ex rel. Ryan v. Agpro, Inc., 214 Ill. 2d 222, 234 (2005). Second, we see no reason why the policy reasons set forth in SI Securities would not apply to covenants to pay assessment fees. The SI Securities court stated that public policy favored the preservation of restrictive covenants because it maintains the value of all properties in a development and does not render title less merchantable, and because it enables property owners to rely on recorded easements and covenants to protect the values of their investments. SI Securities, 362 Ill. App. 3d at 930-31.

Although covenants to pay assessment fees require property owners' affirmative actions, they also enable property owners to maintain the values of their properties by insuring the use and enjoyment of their properties through the continued maintenance of commonly used areas and thoroughfares. See Wesby, 149 Ill. App. 3d at 1064; Lakeland Property Owners Ass'n v. Larson, 121 Ill. App. 3d 805, 812 (1984). In the same way, preservation of a covenant to pay fees for common expenses allows owners to insure that the values of their investments are protected. Therefore, we do not find petitioner's attempts to refute the policy reasons articulated by SI Securities relevant or persuasive.

Because we reject both petitioner's argument that the covenant of assessments is not a covenant running with the land and its argument that section 22--70 applies only to public uses, we find that the trial court did not err when it determined that section 22--70 applied in this case and,

as a result, that the covenant of assessments was not extinguished by the issuance of petitioner's tax deeds.

## 2. Waiver and Estoppel

Petitioner next argues that respondent has waived or is estopped from seeking assessment fees because respondent was made a party to the tax deed proceedings and failed to assert any continuing interest prior to the issuance of the tax deeds. Respondent responds that the Declaration, containing the covenant of assessments, was recorded and, thus, petitioner had notice of the assessments at the time the tax deeds were issued, and there was no need for respondent to take any positive action to assert its claim.

"Waiver is the voluntary and intentional relinquishment of a known right." In re Nitz, 317 Ill. App. 3d 119, 130 (2000). Estoppel refers to the effect of a party's voluntary conduct that precludes it from asserting rights that might otherwise have existed against another person who has detrimentally relied upon such conduct. Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc., 275 Ill. App. 3d 452, 462-63 (1995). We will first discuss waiver. Waiver can arise either expressly or implicitly by conduct inconsistent with an intent to enforce a right. Nitz, 317 Ill. App. 3d at 130. An implied waiver can occur in either of two situations: " '(1) an unexpressed intention to waive can be clearly inferred from the circumstances; or (2) the conduct of one party has misled the other party into a reasonable belief that a waiver has occurred.' " Northwest Diversified, Inc. v. Desai, 353 Ill. App. 3d 378, 399-400 (2004), quoting Batterman v. Consumers Illinois Water Co., 261 Ill. App. 3d 319, 321 (1994). "The party claiming an implied waiver has the burden of proving a clear, unequivocal, and decisive act of its opponent manifesting an intention to waive its rights." Nitz, 317 Ill. App. 3d at 130.

Section 22--70 of the Code states that a tax deed issued under the Code does not infringe on or affect any covenants running with the land. 35 ILCS 200/22--70 (West 2002). Thus, as discussed above, the tax deed proceedings in this case would not have infringed on any covenants running with the land. Respondent's failure to assert at the tax deed proceedings its right to future assessment fees does not signify an unequivocal, decisive waiver of its future assessment fees, because the tax deed proceedings would not have eliminated or contravened any covenants running with the land. Furthermore, petitioner does not argue that it was misled by respondent's failure to raise the issue of assessments at the tax deed proceedings.

For similar reasons, respondent is not estopped from seeking its assessment fees. Equitable estoppel is defined as "the effect of the person's conduct whereby the person is barred from asserting rights that might otherwise have existed against the other party who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse." Geddes v. Mill Creek Country Club, Inc., 196 Ill. 2d 302, 313 (2001). " 'Estoppel may arise from silence as well as words. It may arise where there is a duty to speak and the party on whom the duty rests has an opportunity to speak, and, knowing the circumstances, keeps silent. [Citations.] It is the duty of a person having a right, and seeing another about to commit an act infringing upon it, to assert his right. He cannot by his silence induce or encourage the commission of the act and then be heard to complain.' " Geddes, 196 Ill. 2d at 314, quoting Bondy v. Samuels, 333 Ill. 535, 546 (1929). "The test used to evaluate an estoppel claim is whether, considering all the circumstances of the specific case, conscience and honest dealing require that a party be estopped." Hubble v. O'Connor, 291 Ill. App. 3d 974, 983-84 (1997).

Petitioner's argument that respondent is estopped from asserting the assessments fails for two reasons. First, the doctrine of estoppel requires the moving party to show that it changed its conduct in reliance on the other party's actions. Geddes, 196 Ill. 2d at 313. To claim reliance on another's silence, the party must have acted without knowledge of the truth of the matter relied upon. Wilson v. Illinois Benedictine College, 112 Ill. App. 3d 932, 939 (1983). In this case, petitioner does not contest that respondent recorded its covenant of assessments as to the properties as issue. Therefore, petitioner was on notice that the properties it obtained by tax deed were subject to future assessment fees, and it purchased the properties anyway. As a result, petitioner cannot show that it relied on respondent's silence regarding the assessments.

Second, in order for a party's silence to justify equitable estoppel, the party must have a duty to speak and an opportunity to speak. Geddes, 196 Ill. 2d at 314. A duty to speak arises when a party knowingly watches another infringe upon its rights. See Geddes, 196 Ill. 2d at 314. In this case, respondent had no reason to believe that petitioner's tax deeds infringed upon any right respondent had to future assessments because section 22--70 specifically preserved this right. Therefore, respondent did not have a duty to raise its right to assessment fees at the tax deed proceedings. Consequently, respondent's silence did not constitute grounds for estoppel.

Finally, petitioner cites People v. Cottine, 20 Ill. App. 2d 562 (1959), and section 22--75 of the Code (35 ILCS 200/22--75 (West 2002)) for the proposition that respondent is estopped from asserting its assessments after the issuance of the tax deeds. However, petitioner's reliance on these authorities is misplaced. Both Cottine and the statute concern estopping parties from attacking a tax deed. Cottine, 20 Ill. App. 2d at 572; 35 ILCS 200/22--75 (West 2002). In this case, respondent does not object to petitioner's tax title but rather contends that its assessments fall under section 22--

70 of the Code and survive issuance of the tax deeds. Respondent does not in any way contest the tax deed proceedings or the validity of the tax deeds themselves. Consequently, Cottine and section 22--75 are inapposite to this case.

Therefore, we reject petitioner's arguments that respondent waived or is estopped from collecting assessment fees.

### 3. The Rule Against Perpetuities

Petitioner argues that even if respondent's right to assessment fees survives the issuance of the tax deeds, petitioner is not obligated to pay assessment fees because the covenant of assessments is void under the rule against perpetuities. Petitioner argues that the covenant of assessments creates a future interest in respondent to place a lien on a property and to foreclose on the property. Petitioner points out that the duration of the Declaration is 22 years and, thus, asserts that a future interest contemplated by the Declaration could vest after 21 years.

In 1969, the Illinois legislature passed an act known as the Statute Concerning Perpetuities (Act). Ill. Rev. Stat. 1971, ch. 30, par. 191 (now 765 ILCS 305/2 (West 2004)). Section 2 of the Act provides that the common-law rule against perpetuities shall remain in full force and effect except as modified by the Act. Ill. Rev. Stat. 1971, ch. 30, par. 192 (now 765 ILCS 305/2 (West 2004)). The common-law rule against perpetuities operates to prevent remote vesting of contingent interests in property. Marcy v. Markiewicz, 233 Ill. App. 3d 801, 810 (1992). According to the rule against perpetuities, no interest in property is valid unless it vests within 21 years of a life or lives in being at the time of the creation of the interest. Marcy, 233 Ill. App. 3d at 810. When lives in being form no part of the postponed period, the limit within which an estate must vest is 21 years. Smith v. Renne, 382 Ill. 26, 29 (1943). "It is also the rule that if by any possibility the estate will not vest

within the time required by the rule the devise is void." Renne, 382 Ill. at 29. However, "[n]o interest which is vested at the time of the creation of the interest is subject to the [r]ule." Marcy, 233 Ill. App. 3d at 810.

In this case, the Declaration states:

"A. General. Pursuant to the powers granted to it in its Articles and By-Laws, the Association is hereby expressly authorized and empowered to levy annual assessments against all Lots in the Development. Provided, however, except as may be otherwise indicated, no assessment shall be levied against Lots owned by Declarant.

B. Collection and Lien. The amount of the assessment levied by the Association shall

be paid to it on or before the date or dates fixed by resolution of the Board. If not so paid, the amount of such assessment, plus any other charges thereon, including interest at the maximum limit provided by law per annum from date of delinquency and costs of collection, including attorney's fees, if any, shall constitute and become a lien on the Lot so assessed when the Board causes to be recorded in the office of the appropriate County Recorder of Deeds, a notice of assessment which shall state the amount of such assessment and such other charges and a description of Lot which has been assessed.

***

D. Enforcement. The lien provided for herein may be foreclosed by suit by the Association in like manner as a mortgage and, in such event, the Association may be a bidder

at the foreclosure sale. The Association may also pursue any other remedy against any owner owing money to it which is available by law or equity for the collection of debt."

The Declaration also provides that its provisions exist and bind all parties "until January 1, 1995, after which time the same shall be [automatically] extended for successive periods of ten (10) years each." The Declaration was executed May 25, 1972. Therefore, the length of the initial period of the Declaration is approximately 22 years and 7 months. Thus, because the Declaration lasts more than 21 years, and because the Declaration allows a lien to arise on the property only when the assessments are not paid, there is an interest that could arise after 21 years.

Petitioner argues that because the lien could occur after 21 years, the entire covenant of assessments is void. The premise of petitioner's argument is that respondent's right to impose a lien and a property owner's obligation to pay assessment fees are inseparable parts of the covenant of assessments, such that if the lien is void, the assessment fees are void as well. This premise is flawed. The covenant of assessments is not the lien itself. Wesby, 149 Ill. App. 3d at 1067-68. Rather, the covenant of assessments began at the time of the Declaration, while the lien on a property does not arise until the debt to respondent accrues. See Wesby, 149 Ill. App. 3d at 1067-68. Moreover, liens are created by agreement of the parties or by a fixed statutory rule (La Salle National Trust, 264 Ill. App. 3d at 75); they are not an automatic result of the nonpayment of assessment fees. Thus, in order for a lien to exist, it must be created by agreement or statute in addition to a covenant to pay assessment fees. Consequently, the right to collect assessment fees and the right to a lien on the property upon nonpayment are two separate interests that must be evaluated independently.

In regard to the covenant of assessments, neither party cites any Illinois case that directly addresses whether covenants of assessments that run with the land are subject to the rule against

perpetuities. However, in Wakefield v. VanTassell, 202 Ill. 41, 48 (1903), our supreme court held that a condition in a deed requiring a specific use of the land and running perpetually with the land does not violate the rule against perpetuities. Similarly, in <u>Ashmore v. Newman</u>, 350 Ill. 64, 76 (1932), our supreme court stated that an interest that begins within lives in being and 21 years thereafter, although it may end beyond then, does not come within the rule. Thus, that a covenant running with the land may run beyond 21 years does not render it void under the rule against perpetuities. See Wakefield, 202 Ill. at 48.

Moreover, the rule applies only to future interests, and not present rights in the land. <u>Warren v. Albrecht</u>, 213 Ill. App. 3d 55, 58 (1991). In his treatise, <u>The Rule Against Perpetuities</u>, John Chipman Gray writes that covenants imposing a trust or burden on the land for the benefit of other land are present interests, and are no more subject to the rule than are common-law easements. J. Gray, The Rule Against Perpetuities §280, at 312 (4th ed. 1942).[5] Similarly, the Restatement (Third)

_____

[5]"Gray's classic exposition has been frequently quoted and approved by the Illinois court." <u>Baker v. Bates</u>, 76 Ill. App. 2d 30, 36 (1966); see <u>Chicago Title & Trust Co. v. Shellaberger</u>, 399 Ill. 320, 333 (1948); <u>Fleshner v. Fleshner</u>, 378 Ill. 536, 539 (1941); <u>Danz v. Danz</u>, 373 Ill. 482, 486 (1940); <u>Thomas v. Pullman Trust & Savings Bank</u>, 371 Ill. 577, 586 (1939); <u>Northern Trust Co. v. Porter</u>, 368 Ill. 256, 261-63 (1938); <u>Riddle v. Killian</u>, 366 Ill. 294, 303 (1937); <u>Heitzig v. Goetten</u>, 347 Ill. 619, 627 (1932); <u>Ryan v. Beshk</u>, 339 Ill. 45, 51 (1930); <u>Keogh v. Peck</u>, 316 Ill. 318, 332 (1925); <u>Kern v. Kern</u>, 293 Ill. 238, 252 (1920); <u>Jansen v. Godair</u>, 292 Ill. 364, 377 (1920); <u>Smith v. Chester</u>, 272 Ill. 428, 437 (1916); <u>Lachenmyer v. Gehlbach</u>, 266 Ill. 11, 19 (1914); <u>Armstrong v. Barber</u>, 239 Ill. 389, 402-03 (1909); <u>Brechbeller v. Wilson</u>, 228 Ill. 502, 506 (1907). Gray has also been cited more recently in two Illinois appellate court cases. <u>Warren</u>, 213 Ill. App. 3d at 58; <u>Deiss</u>

of Property states that the rule against perpetuities does not apply to servitudes. Restatement (Third) of Property Servitudes §3.3 (2000). Servitudes include all covenants running with the land, whether they are positive or negative. Restatement (Third) of Property Servitudes §1.3 (2000). More specifically, several cases in other jurisdictions have held that covenants to pay assessments do not violate the rule. Kell v. Bella Vista Village Property Owners Ass'n, 258 Ark. 757, 760, 528 S.W.2d 651, 653 (1975); Lowry v. Norris Lake Shores Development Corp., 231 Ga. 549, 551, 203 S.E.2d 171, 173 (1974); see also Heald v. Ross, 47 A. 575, 579 (N.J. Ch. 1900). Specifically, in Kell, the Arkansas Supreme Court held that although a covenant of assessments was contained in a declaration that lasted for a term of 26 years and then for successive 10-year periods thereafter, the covenant did not violate the rule against perpetuities because there was nothing that kept it from vesting. Kell, 258 Ark. at 760, 528 S.W.2d at 653.

We agree with the cases of other states, that like restrictive covenants and common-law easements, the covenant of assessments is not subject to the rule against perpetuities because it is a present, not a future, interest in property. See Warren, 213 Ill. App. 3d at 58; J. Gray, The Rule Against Perpetuities §280, at 312 (4th ed. 1942). In this case, the Declaration creates a present interest in respondent to collect assessments on all the lots in the development. There is no event that prevents that right from vesting. As a result, the covenant of assessments is a present interest that does not violate the rule against perpetuities. See Kell, 258 Ark. at 760, 528 S.W.2d at 653.

Furthermore, because the covenant of assessments is separate from respondent's lien interest, the validity of the lien interest has no effect on the covenant of assessments. The Restatement gives the following example and explanation:

---

v. Deiss, 180 Ill. App. 3d 600, 603 (1989).

"6. The original deeds to lots in Black Acres, a 120-lot residential subdivision, stated that the conveyances were made on condition that the land not be used for other than residential purposes, and that on violation of the condition, ownership of the lot should vest in the community association for Black Acres. Although the rule against perpetuities applies to the executory interest of the association, it does not apply to the servitudes *** that restrict use of the land to residential purposes for the benefit of all lots in the subdivision." Restatement (Third) of Property Servitudes §3.3, Comment a, Illustration 6 (2000).

The Restatement's example illustrates that even when a covenant provides the contingency upon which another interest subject to the rule against perpetuities may arise, the covenant itself is not void pursuant to the rule. Restatement (Third) of Property Servitudes §3.3, Comment a (2000). Similarly, in this case, although the obligation to pay assessments provides the condition upon which the lien depends, the assessments themselves are servitudes not subject to the rule.

Moreover, pursuant to the Declaration:

"Every provision of this Declaration is hereby declared to be independent of and severable from every other provision hereof. If any provision hereof shall be held by a court of competent jurisdiction to be invalid, or unenforceable, all remaining provisions shall continue unimpaired and in full force and effect."

An unambiguous contract must be enforced as it is written. La Salle National Trust, N.A., 264 Ill. App. 3d at 67-68. Thus, even if arguendo the provision of the Declaration allowing a lien for unpaid assessments was void, pursuant to the written covenant the provision requiring the payment of assessments would remain in effect. See Health Professionals, Ltd. v. Johnson, 339 Ill. App. 3d 1021,1028 (2003). Accordingly, because the covenant of assessments is a vested interest, and

because the lien provision does not affect the validity of the covenant of assessments, the trial court did not err in finding that the covenant of assessment did not violate the rule.

Finally, because we have concluded that the validity of the lien provision has no effect on the covenant of assessments, we need not decide if the provision of the Declaration allowing for a lien upon nonpayment of assessments is subject to the rule against perpetuities. In both its amended application for declaratory judgment and its motion for summary judgment, petitioner requested a declaration that "the Lake Carroll Association's positive covenant of assessment is void from its inception under the Rule Against Perpetuities." (Emphasis added.) Petitioner did not argue or allege that the lien, separate from the covenant of assessments, is an interest subject to the rule against perpetuities. Rather, petitioner specifically requested the court to declare respondent's liens ineffective on other grounds. Therefore, although petitioner put the liens at issue as part of its argument that the covenant of assessments was void, it did not challenge the liens themselves on these grounds. We will not consider arguments petitioner did not raise in the trial court (Jeanblanc v. Sweet, 260 Ill. App. 3d 249, 254 (1994)), and thus, we will not decide whether respondent's right to a lien upon nonpayment violates the rule against perpetuities. We find only that the trial court correctly held that the covenant of assessments was not void under the rule against perpetuities. Therefore, we reject petitioner's contention that the trial court erred in upholding its obligation to pay assessment fees that accrued after the issuance of the tax deeds.

## C. Interest and Unjust Enrichment

Petitioner next contends that it is entitled to recover assessment fees it paid respondent and prejudgment and postjudgment interest because the fees were improperly charged and because respondent was unjustly enriched by petitioner's payment of the contested assessments. However,

because the trial court found that none of the assessment fees were improperly paid, it did not reach these issues prior to denying petitioner's motion for summary judgment. As a result, we will not render opinions on these issues. Instead we remand this case for the trial court to adjudicate petitioner's claim of unjust enrichment and prayers for prejudgment and postjudgment interest. See 155 Ill. 2d R. 366(a)(5); Holmes v. Federal Insurance Co., 353 Ill. App. 3d 1062, 1066 (2004).

### III. CONCLUSION

For the foregoing reasons, we reverse the portion of the circuit court of Carroll County's order that granted respondent's motion for summary judgment and denied petitioner's motion for summary judgment on the basis that assessments began to accrue on the date of the Tax Deed Orders. We affirm the portion of that order that determined that respondent's collection of assessments after the dates of issuance of the tax deeds was proper. We remand the case for the trial court to consider petitioner's claims of unjust enrichment and prejudgment and postjudgment interest. See 155 Ill. 2d R. 366(a)(5).

Affirmed in part and reversed in part; cause remanded.

GROMETER, P.J., and McLAREN, J., concur.