# Illinois Official Reports

## Appellate Court

---

*In re Application of the County Treasurer & ex officio County Collector*,
**2017 IL App (4th) 170003**

---

| | |
|---|---|
| Appellate Court Caption | *In re* APPLICATION OF COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR, for Judgment and Order of Sale Against Real Estate Returned Delinquent for Nonpayment of General Taxes and Special Assessments for the Year 2010 and Prior Years (Community Enrichment Group, LLC, Plaintiff-Appellee, v. Daniel Welch, in His Official Capacity as Champaign County Treasurer and *ex officio* County Collector, Defendant-Appellant). |
| District & No. | Fourth District<br>Docket No. 4-17-0003 |
| Filed | September 12, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 11-TX-01-S-055; the Hon. Holly F. Clemons, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Julia Rietz, State's Attorney, of Urbana (Barbara J. Mann and Donna M. Davis, Assistant State's Attorneys, of counsel), for appellant.<br><br>John Barr, of Barr & Barr, of Decatur, for appellee. |

| Panel | JUSTICE APPLETON delivered the judgment of the court, with opinion.<br>Justices Harris and Holder White concurred in the judgment and opinion. |

**OPINION**

¶ 1      At an annual tax sale, plaintiff, Community Enrichment Group, LLC, bought the 2010 taxes for 1505 North Neil Street, Champaign, Illinois, Property Index No. 41-20-01-401-036. The period of redemption expired, and the owner never did redeem the property. Even so, to obtain a tax deed, plaintiff had to pay all taxes that became due and payable subsequent to the sale. See 35 ILCS 200/22-40(a) (West 2014) (effective June 1, 2015). That meant paying the taxes for 2011 to 2014—a routine and expected cost.

¶ 2      In addition, however, plaintiff had to redeem all sales that occurred subsequent to the sale. See *id.* This item was unforeseeable and unquantifiable at the time plaintiff bought the 2010 taxes. After the tax sale to plaintiff, a prior tax purchaser, the purchaser of the 2008 taxes, obtained the judicial declaration of a "sale in error" (35 ILCS 200/21-310(b)(1), (4) (West 2012)) and was refunded the amount it had paid for the 2008 taxes. As a result, the 2008 taxes became delinquent again, and a third tax purchaser bought them. This sale to the third tax purchaser was subsequent to the sale of the 2010 taxes to plaintiff. Again, to obtain a tax deed, plaintiff not only had to pay the 2011 to 2014 taxes but also had to redeem any tax sale that occurred subsequent to the tax sale to plaintiff. See 35 ILCS 200/22-40(a) (West 2014) (effective June 1, 2015). That meant redeeming the sale of the 2008 taxes to the third tax purchaser. With the accumulated penalties and interest, the cost of doing so was quite substantial, $188,085.12. Plaintiff paid that amount, together with the 2011 to 2014 taxes, and obtained a tax deed.

¶ 3      After recording its tax deed, plaintiff moved for the declaration of a sale in error (35 ILCS 200/21-310(a)(1) (West 2014) (effective June 1, 2015)) and requested a refund of the $188,085.12, the amount plaintiff had paid to redeem the sale of the 2008 taxes. Specifically, plaintiff invoked the first sentence of section 22-40(b): "If taxes for years prior to the year or years sold are or become delinquent subsequent to the date of sale, the court shall find that the lien of those delinquent taxes has been or will be merged into the tax deed grantee's title ***." 35 ILCS 200/22-40(b) (West 2014) (effective June 1, 2015). Over the objection of defendant, Daniel Welch, the Champaign County treasurer and *ex officio* county collector, the trial court granted plaintiff's motion. Defendant appeals.

¶ 4      The parties agree that our standard of review in this appeal should be *de novo*, since the facts are undisputed and all we have to do is interpret the relevant statutes and apply them to the undisputed facts. See *American Federation of State, County & Municipal Employees (AFSCME), AFL-CIO v. County of Cook*, 136 Ill. 2d 334, 349 (1990). In our *de novo* review, we conclude that the requested refund is contrary to section 22-40(a) of the Property Tax Code (35 ILCS 200/22-40(a) (West 2014) (effective June 1, 2015)). We further conclude it is impossible to obtain the declaration of a sale in error while retaining title to the property.

Therefore, we reverse the trial court's judgment.

¶ 5                                      I. BACKGROUND

¶ 6        The property taxes on 1505 North Neil Street (the property) were delinquent for the 2008 tax year. On October 28, 2009, at the annual tax sale, Vista Securities, Inc. (Vista), bought the taxes, and defendant, in his capacity as the *ex officio* county collector, issued certificate of purchase No. 635 to Vista. (By "bought the taxes," we mean that Vista paid the 2008 taxes plus costs and interest and, in return, it received a lien on the property, as memorialized by the certificate of purchase. See *City of Bloomington v. John Allan Co.*, 18 Ill. App. 3d 569, 576 (1974); *In re Application of County Treasurer of Cook County for Sale of Certain Real Estate for Delinquent Taxes*, 14 Ill. App. 3d 1062, 1065 (1973); *City of Chicago v. City Realty Exchange, Inc.*, 127 Ill. App. 2d 185, 190 (1970).) The certificate was evidence of Vista's right to obtain title to the property if, when the redemption period expired, its lien was unredeemed. See 35 ILCS 200/21-350, 21-355 (West 2008); *In re Application of the County Treasurer & ex officio County Collector*, 373 Ill. App. 3d 679, 686-87 (2007). Vista then would have the right, but not the duty, to exchange the certificate for a tax deed, subject to the fulfillment of all the statutory conditions. See 35 ILCS 200/22-40(a) (West 2008); *County Collector*, 373 Ill. App. 3d at 686-87.

¶ 7        Afterward, the taxes on the property were unpaid for the 2010 tax year as well. On October 28, 2011, at the annual tax sale, plaintiff bought the 2010 taxes, paying $12,681.94. In return, defendant, as the *ex officio* county collector, issued certificate of purchase No. 583 to plaintiff.

¶ 8        In 2012, after plaintiff bought the 2010 taxes, Vista applied for the judicial declaration of a sale in error, alleging that (1) improvements to the property had been destroyed since the tax sale to Vista (see 35 ILCS 200/21-310(b)(2) (West 2012)) and (2) the property contained hazardous waste and an underground storage tank, which would have to be removed (see 35 ILCS 200/21-310(b)(4) (West 2012)).

¶ 9        On November 20, 2012, the trial court granted Vista's application for the declaration of a sale in error, ordering defendant, as the *ex officio* county treasurer, to refund to Vista the 2008 taxes it had paid for certificate of purchase No. 635. See 35 ILCS 200/21-310(d) (West 2012).

¶ 10       Accordingly, on November 27, 2012, defendant refunded to Vista the 2008 taxes, which Vista had paid for the (now canceled) certificate of purchase No. 635. See *id.*

¶ 11       On October 25, 2013, defendant declared the 2008 taxes to be due and delinquent because of the allowance of Vista's application for a sale in error. By then, interest and penalties had increased the 2008 taxes to $109,316.28. See 35 ILCS 200/18-250(a) (West 2012). On that date, at the annual tax sale, a third purchaser, whom plaintiff identifies in its brief as "the Champaign County Trustee," bought the 2008 taxes and was issued certificate of purchase No. 512.

¶ 12       On April 27, 2014, plaintiff filed a petition, requesting that the trial court order the issuance of a tax deed to plaintiff in the event the property was not redeemed by the extended deadline of August 22, 2014. See 35 ILCS 200/21-385, 22-30 (West 2014). In the petition, plaintiff's attorney verified to the court, under penalty of perjury (see 735 ILCS 5/1-109 (West 2014)), "[t]hat all taxes and special assessments which become due and payable on said parcel of real estate subsequent to the date of said sale and prior to the issuance of a tax deed, [would] be paid

and all forfeitures and sales occurring in said interval, if any, [would] be redeemed." See 35 ILCS 200/22-40(a) (West 2014) (effective until June 1, 2015).

¶ 13    On August 27, 2014, the trial court ordered the issuance of a tax deed to plaintiff, since the property was unredeemed. One of the findings in the order was as follows:

"4. That all general taxes and special assessments which have become due and payable subsequent to said sale have been or will be paid prior to the issuance of the tax deed, and all forfeitures and sales which occurred subsequent thereto have been redeemed or will be redeemed prior to the issuance of the tax deed."

¶ 14    On May 18, 2015, plaintiff filed a "Motion For Order of Merger of Real Estate Taxes." (Plaintiff had not yet gone to the county clerk and obtained a tax deed.) In its motion, plaintiff requested a judicial order to the following effect:

"That this Court enter an order declaring the 2008 real estate taxes as previously identified by tax certificate 635 and now identified as tax certificate 512 have been merged into the tax deed title to be obtained by [plaintiff] in its tax deed and further directing the Champaign County Treasurer and Champaign County Clerk to reflect that declaration in the warrant and judgment records."

Plaintiff cited section 22-40(b) (35 ILCS 200/22-40(b) (West 2014) (effective until June 1, 2015)) as authority for the proposed "merger."

¶ 15    On June 10, 2015, defendant filed an objection to plaintiff's "Motion For Order of Merger of Real Estate Taxes." Citing *In re Application of the County Treasurer & ex officio County Collector of Cook County*, 389 Ill. App. 3d 398, 402-03 (2009) (hereinafter *Elzey*), he argued it would be a violation of section 22-40(a) of the Property Tax Code (35 ILCS 200/22-40(a) (West 2014) (effective June 1, 2015)) to issue plaintiff a tax deed before "all taxes and special assessments which became due and payable subsequent to the [tax] sale ha[d] been paid and all forfeitures and sales which occur[red] subsequent to the sale ha[d] been redeemed."

¶ 16    On June 24, 2015, plaintiff's attorney offered to "dismiss," "without prejudice," the "Motion For Order of Merger of Real Estate Taxes." In response, the trial court ordered: "[T]he motion for an order of merger of real estate taxes is withdrawn with leave to reinstate. We will show the [defendant's] objection [to the motion] is accordingly stricken as moot."

¶ 17    On July 23, 2015, plaintiff paid $12,146 for the 2011 taxes, $12,679 for the 2012 taxes, $12,922 for the 2013 taxes, and $13,039 for the 2014 taxes. Those were the taxes for the years *subsequent* to the tax sale to plaintiff. In addition, plaintiff paid the taxes for 2008, a year *predating* the sale to plaintiff. The reason was that *after* the sale to plaintiff, the trial court granted Vista's declaration of a sale in error, defendant therefore declared the 2008 taxes to be again due and delinquent, and the Champaign County trustee bought the 2008 taxes. Thus, the 2008 taxes went into arrears after the sale to plaintiff, just like the taxes for 2011, 2012, 2013, and 2014. Plaintiff paid $188,085.12 to redeem the sale of the 2008 taxes to the Champaign County trustee. (Interest and penalties had increased the 2008 taxes to that amount.) On July 23, 2015, after plaintiff made all those payments, the county clerk issued a tax deed to plaintiff, and plaintiff recorded it.

¶ 18    On September 17, 2015, plaintiff filed a "Motion For Sale in Error and Merger." In that motion, plaintiff invoked two sections of the Property Tax Code: section 21-310(a)(1) (35 ILCS 200/21-310(a)(1) (West 2014)) and section 22-40(b) (35 ILCS 200/22-40(b) (West

2014) (effective June 1, 2015)). On the authority of those two sections, plaintiff requested the following relief:

> "(A) That this Court declare a sale in error in this matter;
>
> (B) That this Court order and direct the Champaign County Clerk and Treasurer to refund to [plaintiff] the 2008 taxes paid for Certificate No. 635, in the amount of $188,085.12 with interest at the rate of one percent per month from July 23, 2015[,] until date of payment.
>
> (C) That this Court enter an order declaring the 2008 real estate taxes as identified by tax certificate 635 have been merged into the tax deed title obtained by [plaintiff] in its tax deed filed as document 2015R13737 in the records of the Champaign County Recorder and further directing the Champaign County Treasurer and Champaign County Clerk to reflect that declaration in the warrant and judgment records."

¶ 19    On October 9, 2015, defendant filed objections to plaintiff's motion. Essentially, his objections were twofold. First, he argued that, under section 21-310 (35 ILCS 200/21-310 (West 2014)), plaintiff lacked the right to move for the declaration of a sale in error, because plaintiff was not the county collector, a municipal owner of the property, or the owner of certificate of purchase No. 512 (rather, the Champaign County trustee was the owner of that certificate). Second, defendant argued that, under *Elzey*, "the merger of taxes [could] only be obtained as to delinquent taxes which the tax deed petitioner was *not* required to pay or redeem as a precondition to obtaining a tax deed." (Emphasis in original.)

¶ 20    There was additional briefing, and on June 14, 2016, the trial court held that, under *Elzey*, the 2008 taxes could not be merged into plaintiff's tax deed. Accordingly, the court denied plaintiff's "Motion For Sale in Error and Merger."

¶ 21    On July 11, 2016, plaintiff moved for reconsideration.

¶ 22    On October 12, 2016, the trial court vacated its decision of June 14, 2016, and granted plaintiff's "Motion For Sale in Error and Merger." The court explained its change of mind as follows:

> "Upon further reflection the court finds that the court's ruling from June 14, 2016[,] yields an unduly harsh result. The events and timing regarding Vista's sale in error were completely out of [plaintiff's] control. [Plaintiff] then followed the *Elzey* court's procedure and paid the 2008 delinquent taxes of $188,085.12, and got a tax deed on July 23, 2015. Public policy and equity dictate the necessity for the court to reverse its prior ruling and allow a sale in error and merger. As Plaintiff noted in its brief, the intent of the merger statute is to eliminate unfairness to a second tax purchaser who would be liable when a first tax purchaser obtains a sale in error. Essentially the same principles are at work here. I do believe that the *Elzey* case can be somewhat distinguished with respect to its findings. Certainly it was clear that that case involved a scavenger sale[,] which obviously is not the situation here.
>
> Moreover, this court's original ruling would likely have a disastrous effect on the tax purchase system in the long term if an innocent tax purchaser cannot reasonably rely on their ability to purchase—I'm sorry—on their ability to pursue an investment without fear that a subsequent huge tax liability may be imposed through no fault of their own.

The court believes that public policy and equity dictate that the Plaintiff's Motion for Sale in Error and Merger should be granted."

The court requested plaintiff's attorney to draft a written order.

On December 7, 2016, the trial court signed and entered the written order.

Defendant appealed on January 4, 2017.

II. ANALYSIS

A. The Language of the Statutes

As we said, on September 17, 2015, plaintiff filed a "Motion For Sale in Error and Merger," in which plaintiff invoked sections 21-310(a)(1) and 22-40(b) of the Property Tax Code (35 ILCS 200/21-310(a)(1), 22-40(b) (West 2014) (effective June 1, 2015)).

In its brief, plaintiff really does not explicate the actual language of those statutes. "[O]ur inquiry," however, "begins with the plain language of the statute[s]." *City of Chicago v. Janssen Pharmaceuticals, Inc.*, 2017 IL App (1st) 150870, ¶ 16. We interpret statutes *de novo*, giving the statutory language its plain and ordinary meaning. See *Lacey v. Village of Palatine*, 232 Ill. 2d 349, 361 (2009). We will not, "under the guise of statutory interpretation," " 'correct' an apparent legislative oversight by rewriting a statute in a manner inconsistent with its clear and unambiguous language." *In re Marriage of Murphy*, 203 Ill. 2d 212, 219 (2003).

With those principles in mind, let us begin with the text of section 21-310 (35 ILCS 200/21-310 (West 2014)). Subsections (a)(1) and (d) provide as follows:

"(a) When, upon application of the county collector, the owner of the certificate of purchase, or a municipality which owns or has owned the property ordered sold, it appears to the satisfaction of the court which ordered the property sold that any of the following subsections are applicable, the court shall declare the sale to be a sale in error:

(1) *** all or any part of the lien of taxes sold has become *** unenforceable pursuant to *** subsection (b) of Section 22-40 [(35 ILCS 200/22-40(b) (West 2014) (effective June 1, 2015))] ***.

* * *

(d) If a sale is declared to be a sale in error, the county clerk shall make entry in the tax judgment, sale, redemption[,] and forfeiture record, that the property was erroneously sold, and the county collector shall, on demand of the owner of the certificate of purchase, refund the amount paid, pay any interest and costs ***, and cancel the certificate so far as it relates to the property." 35 ILCS 200/21-310(a)(1), (d) (West 2014).

Next, let us consider the text of section 22-40 (35 ILCS 200/22-40 (West 2014) (effective June 1, 2015)). Subsections (a) and (b) provide as follows:

"(a) If the redemption period expires and the property has not been redeemed and all taxes *** which became due and payable subsequent to the sale have been paid and all forfeitures and sales which occur subsequent to the sale have been redeemed *** and the petitioner has complied with all the provisions of law entitling him or her to a deed, the court shall so find and shall enter an order directing the county clerk[,] on the production of the certificate of purchase and a certified copy of the order, to issue to the purchaser or his or her assignee a tax deed.

- 6 -

(b) If taxes for years prior to the year or years sold are or become delinquent subsequent to the date of sale, the court shall find that the lien of those delinquent taxes has been or will be merged into the tax deed grantee's title if the court determines that the tax deed grantee or any prior holder of the certificate of purchase, or any person or entity under common ownership or control with any such grantee or prior holder of the certificate of purchase, was at no time the holder of any certificate of purchase for the years sought to be merged. If delinquent taxes are merged into the tax deed pursuant to this subsection, the court shall enter an order declaring which specific taxes have been or will be merged into the tax deed title and directing the county treasurer and county clerk to reflect that declaration in the warrant and judgment records; provided, that no such order shall be effective until a tax deed has been issued and timely recorded." 35 ILCS 200/22-40(a), (b) (West 2014) (effective June 1, 2015).

¶ 31    Having set forth the actual language of the statutes, we now are in a position to interpret and apply those statutes.

¶ 32                    B. The Inapplicability of Section 21-310(a)(1) to Plaintiff

¶ 33    Under section 21-310(a) (35 ILCS 200/21-310(a) (West 2014)), three parties can bring an action for the declaration of a sale in error: (1) the county collector, (2) the owner of the certificate of purchase, or (3) a municipality that owns or has owned the property ordered to be sold. Obviously, plaintiff is neither (1) nor (3). The only remaining possibility is (2).

¶ 34    To be sure, plaintiff was the owner of a certificate of purchase—by paying the 2010 taxes, plaintiff acquired certificate of purchase No. 583—but plaintiff must be the owner of not just any certificate of purchase but "*the* certificate of purchase": the certificate of purchase memorializing a lien that, by operation of section 22-40(b) (35 ILCS 200/22-40(b) (West 2014) (effective June 1, 2015)), has become "unenforceable." (Emphasis added.) 35 ILCS 200/21-310(a)(1) (West 2014). Under section 22-40(b), a lien becomes unenforceable, in certain circumstances, by merging with the tax deed grantee's title. Specifically, the first sentence of that section provides: "If taxes for years prior to the year or years sold are or become delinquent subsequent to the date of [the tax] sale, the court shall find that the lien of those delinquent taxes has been or will be merged into the tax deed grantee's title ***." 35 ILCS 200/22-40(b) (West 2014) (effective June 1, 2015).

¶ 35    Section 21-310(a)(1), a section that plaintiff invoked in its "Motion For Sale in Error and Merger," is inapplicable because plaintiff's lien for the 2010 taxes never became unenforceable by merging into the title of a tax deed grantee. The tax deed grantee was plaintiff, not someone else. Plaintiff enforced its lien by obtaining a tax deed. See *In re Application of the County Treasurer of Cook County*, 185 Ill. App. 3d 701, 703 (1989) ("[T]he tax sale certificate is personal property, a form of negotiable instrument, which represents a lien on the property in favor of the tax buyer and the tax buyer's right to enforce the lien and institute tax deed proceedings after the redemption period expires."). Section 21-310(a)(1), in its actual terms, has nothing to do with plaintiff.

¶ 36    Besides, plaintiff could not both receive a refund under section 21-310(d) (35 ILCS 200/21-310(d) (West 2014)) and keep the property. When the county collector makes a refund, the county clerk must "make entry in the tax judgment, sale, redemption[,] and forfeiture record[ ] that the property was erroneously sold" (35 ILCS 200/21-310(d) (West 2014)), whereupon "[t]he property becomes tax delinquent again" (11 John P. Fitzgerald, Illinois Real

- 7 -

Property § 58:204, at 287 (Supp. 2017)). Plaintiff cannot have the sale declared to be a sale in error and then retain the fruits of the sale. If the county collector gives plaintiff a refund, the county collector will have to cancel the certificate of purchase (see 35 ILCS 200/21-310(d) (West 2014)), which plaintiff already has used to obtain a tax deed (see 35 ILCS 200/22-40(a) (West 2014) (effective June 1, 2015)). If the certificate of purchase loses its validity, it is unclear how the tax deed could remain valid, considering that the issuance of the tax deed was conditional on plaintiff's production of the certificate of purchase to the county clerk (see *id.*).

¶ 37    For all those reasons, section 21-310 is inapplicable to plaintiff: not only subsection (a)(1), which plaintiff invoked in its "Motion For Sale in Error and Merger," but also subsection (d), the subsection pertaining to refunds.

¶ 38                    C. The Lack of Any Provision in Section 22-40(b) for a Refund

¶ 39    To obtain a tax deed, plaintiff had to pay "all taxes *** which became due and payable subsequent to the sale" and also redeem "all forfeitures and sales which occur[red] subsequent to the sale." *Id.* "The plain language of a statute provides the most reliable indicator of legislative intent, and we must not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent." *Hawes v. Luhr Brothers, Inc.*, 212 Ill. 2d 93, 105 (2004). "[A]ll *** sales" means all sales. 35 ILCS 200/22-40(a) (West 2014) (effective June 1, 2015). It does not mean all sales *except* sales of taxes for years prior to the year sold to the petitioner.

¶ 40    The tax sale to plaintiff was on October 28, 2011, when plaintiff bought the 2010 taxes. "[S]ubsequent to" that date, the taxes for the 2008 tax year became "due and payable" because of the declaration of a sale in error and a refund to Vista. *Id.* "A refund operates as a reinstatement of the tax lien that had been erroneously sold. The property becomes tax delinquent again." Fitzgerald, *supra* § 58:204, at 287. Consequently, on October 25, 2013, there was a third tax sale, this time to the Champaign County trustee, for the amount of the 2008 taxes. The issuance of a tax deed to plaintiff was conditional on the redemption of "all *** sales which occur[red] subsequent to the sale" to plaintiff. 35 ILCS 200/22-40(a) (West 2014) (effective June 1, 2015). That meant redeeming the sale to the Champaign County trustee, since this was a sale that "occur[red] subsequent to" the sale to plaintiff. *Id.* Accordingly, plaintiff paid the 2008 taxes, along with costs and interest ($188,085.12), thereby redeeming the sale to the Champaign County trustee and discharging the trustee's lien. See *id.* In exchange for that payment, together with the payment of the 2011 to 2014 taxes and the fulfillment of the other conditions in section 22-40(a), the trial court ordered the issuance of a tax deed to plaintiff.

¶ 41    After recording its tax deed, plaintiff filed a motion to be refunded, with interest, the $188,085.12 it had paid to redeem the sale to the Champaign County trustee. As we have explained, we find no authority in sections 21-310(a)(1) and (d) for such a refund to plaintiff.

¶ 42    We find no authority in section 22-40(b), either, which is the other section that plaintiff invoked in its "Motion For Sale in Error and Merger." Section 22-40(b) says nothing about a refund but, instead, provides for the merger of a prior tax purchaser's "lien" into the tax deed grantee's title. The legislature knows how to say "refund" when it intends to communicate the idea of a refund. For example, in subsection (d) of section 21-310 (35 ILCS 200/21-310(d) (West 2014)), the section pertaining to sales in error, the legislature demonstrates an ability to say, clearly and explicitly, "refund the amount paid," when it intends a refund to be made. See

also, *e.g.*, 35 ILCS 200/21-320 (West 2014) ("If a sale in error *** is declared, the amount refunded shall also include other taxes paid or redeemed by the owner of the certificate of purchase *** subsequent to the tax sale ***."); 35 ILCS 200/21-335 (West 2014) ("Any refund of interest or costs upon the petition for sale in error *** shall be paid by the county treasurer as trustee of the fund created by this Section."). Section 22-40(b) contains no mention of a "refund," "reimbursement," or any synonym for being paid back.

¶ 43 It would be against binding case law for us to "imply," *i.e.*, insert, into section 22-40(b) a right to a refund. "[T]axing statutes are to be strictly construed. Their language is not to be extended or enlarged by implication, beyond its clear import." (Internal quotation marks omitted.) *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 202 (1989); see also *Northwest Airlines, Inc. v. Department of Revenue*, 295 Ill. App. 3d 889, 892 (1998) ("Tax laws must be strictly construed; they must be given a reasonable construction, without bias or prejudice against either the [taxing body] or the taxpayer, in order to effectuate the intent of the legislature."). By reading into section 22-40(b) a right to a refund, we would enlarge the language of that section by implication, instead of strictly construing that section.

¶ 44 As plaintiff points out, the supreme court also said in *Van's Material*: "In cases of doubt[,] [taxing statutes] are construed most strongly against the government and in favor of the taxpayer." *Van's Material*, 131 Ill. 2d at 202. But we should use that rule of construction only if section 22-40 (35 ILCS 200/22-40 (West 2014) (effective June 1, 2015)) is ambiguous. A statute is ambiguous if its language is susceptible to more than one equally reasonable interpretation. *Board of Education of Springfield School District No. 186 v. Attorney General*, 2017 IL 120343, ¶ 25. Does the conjunction of section 22-40(a) and section 22-40(b) create a case of doubt, an ambiguity?

¶ 45 Let us compare the two sections. Again, under section 22-40(a), one of the conditions for ordering the issuance of a tax deed is that "all taxes and special assessments which became due and payable subsequent to the sale have been paid and all forfeitures and sales which occur subsequent to the sale have been redeemed." 35 ILCS 200/22-40(a) (West 2014) (effective June 1, 2015). Thus, if, because of the declaration of a sale in error, taxes for a year prior to the year sold to the petitioner become delinquent after the sale to the petitioner, and if those delinquent taxes are sold to a subsequent tax purchaser, section 22-40(a) requires the redemption of that subsequent sale before the trial court orders the issuance of a tax deed to the petitioner.

¶ 46 The next subsection, subsection (b), provides: "If taxes for years prior to the year or years sold are or become delinquent subsequent to the date of sale, the court shall find that the lien of those delinquent taxes has been or will be merged into the *tax deed grantee's* title ***." (Emphasis added.) 35 ILCS 200/22-40(b) (West 2014) (effective June 1, 2015). The trial court shall enter an order declaring the merger, but the order will not "be effective until a tax deed has been issued and timely recorded." *Id.* Note that, in this context, the statute refers not to a petitioner for a tax deed, but to a tax deed grantee, *i.e.*, a tax purchaser who already has been issued a tax deed. See Black's Law Dictionary 707 (7th ed. 1999) (defining a "grantee" as "[o]ne to whom property is conveyed"). When the legislature means a petitioner for a tax deed, the legislature knows how to say "petitioner" (35 ILCS 200/22-40(a) (West 2014) (effective June 1, 2015)), and when the legislature means a tax deed grantee, the legislature knows how to say "tax deed grantee" (35 ILCS 200/22-40(b) (West 2014) (effective June 1, 2015)).

¶ 47    Further note that no order declaring the merger of a lien shall be effective—and, therefore, no such merger of a lien shall occur—until *after* the tax deed is issued and recorded within the allowed time (see 35 ILCS 200/22-85 (West 2014)). 35 ILCS 200/22-40(b) (West 2014) (effective June 1, 2015). This is another way of saying that the beneficiary of a merger must be a tax deed grantee: one to whom the property already has been conveyed by the county clerk's issuance and delivery of a tax deed. Thus, even assuming, for the sake of argument, that the right to a refund could be implied from the merger of a lien, the lien does not merge into the tax deed grantee's title until after the issuance and recording of the tax deed, whereupon a "tax deed grantee" comes into existence. *Id.*

¶ 48    To become a tax deed grantee in the first place, the petitioner had to do several things, including redeeming any sales subsequent to the sale to the petitioner (35 ILCS 200/22-40(a) (West 2014) (effective June 1, 2015)). The redemption of a sale to the subsequent tax purchaser discharges the subsequent purchaser's lien. Therefore, even if a right to a refund could be implied from the merger of a lien into the tax deed grantee's title, the Champaign County trustee's lien no longer existed, and, hence, could not be merged into plaintiff's title, *after* plaintiff was issued the tax deed and recorded it—the reason being that plaintiff had discharged the Champaign County trustee's lien in order to obtain the tax deed.

¶ 49    The following question might be asked, though: If, as a condition of the granting of a petition for a tax deed, all subsequent sales have to be redeemed, including sales of taxes for years prior to the year sold to the petitioner, and if, after such a redemption, there is no right to a refund of amounts the petitioner paid to redeem those sales, how would the lien-merging provision in section 22-40(b) ever be operative? The answer is that after the tax deed grantee records its deed, a prior tax purchaser might obtain the declaration of a sale in error—and consequently a refund—for a year prior to the year sold to the grantee. Again, "[a] refund operates as a reinstatement of the tax lien that had been erroneously sold. The property becomes tax delinquent again." Fitzgerald, *supra* § 58:204, at 287. A crushing load of back taxes, interest, and penalties could fall on the tax deed grantee out of the clear blue sky. To avert that misfortune, the tax deed grantee can obtain an order of merger. See 35 ILCS 200/22-40(b) (West 2014) (effective June 1, 2015).

¶ 50                                          D. *Elzey*

¶ 51    Both the trial court and plaintiff reason that *Elzey* is distinguishable because, unlike the present case, *Elzey* involved scavenger sales. (Parcels that have been tax-delinquent for three years or longer (see 35 ILCS 200/21-145 (West 2014)) can be sold at a scavenger sale to the highest bidder for cash (35 ILCS 200/21-260 (West 2014)). The highest bid will win even if it is less than the amount of the taxes for which the judgment had been entered. *Id.* The goal is to return tax-delinquent property to a revenue-producing status. *In re Application of Rosewell*, 93 Ill. App. 3d 1106, 1109 (1981).)

¶ 52    We see no indication, however, in the First District's analysis in *Elzey*, that it attributed any significance to the fact that the sales were scavenger sales. The First District did not discuss any of the peculiar features of a scavenger sale and relate those features to section 22-40(a). The buyer in a scavenger sale must comply with section 22-40(a) just like the buyer in an annual tax sale. 35 ILCS 200/21-260(e) (West 2014). We are unconvinced by the attempt to distinguish *Elzey*.

- 10 -

¶ 53    *Elzey* is relevant, but mainly it grapples with an issue that would be a straw man in this case. The essential dispute in *Elzey* does not appear to be a dispute in this case. *Elzey* answered the question of whether, to obtain a tax deed, the petitioner had to redeem the subsequent sale of a prior tax year. *Elzey*, 389 Ill. App. 3d at 400-01. That question—to which the First District answered yes (*id.* at 402)—is not a question in the present case. Plaintiff admits in its brief: "Pursuant to 35 ILCS 200/22-40(a), [plaintiff], before it could obtain a tax deed, was required to pay all subsequent delinquent real estate taxes[,] including the 2008 taxes[,] which had increased to $188,085.12." And again, plaintiff admits in its brief: "[T]he tax purchaser, in order to obtain a tax deed, must initially pay all subsequent real estate taxes[,] including any prior taxes which become due again because of a sale in error. 35 ILCS 200/22-40(a) (West 2015 [*sic*])." It would be unnecessary to deploy *Elzey* to establish what plaintiff already admits.

¶ 54    *Elzey* is helpful, however, in its discussion of who can obtain an order of merger pursuant to section 22-40(b) (35 ILCS 200/22-40(b) (West 2006)) and when such an order takes effect. *Elzey*, 389 Ill. App. 3d at 402-03. To explain what we mean, let us begin by recounting the facts of *Elzey*.

¶ 55    In December 2003, at a scavenger tax sale, Real Management, Inc. (Real Management), bought the 2000 and 2001 taxes for a property in Chicago. *Id.* The redemption period expired, and the property was not redeemed, so Real Management petitioned for a tax deed and assigned its certificate of purchase to Elton Elzey. *Id.* In December 2007, the trial court ordered the county clerk to issue a tax deed to Elzey. *Id.*

¶ 56    In January 2006, during the interim between the scavenger sale to Real Management and the order to issue a tax deed to Elzey, there was a second scavenger tax sale in January 2006. *Id.* In that sale, Sahli Enterprises, Inc. (Sahli), bought the taxes for 1987 to 1995, 1998, 1999, and 2003. *Id.*

¶ 57    In August 2007, Elzey filed a motion, in which, pursuant to section 22-40(b) (35 ILCS 200/22-40(b) (West 2006)), he requested the trial court to order that the taxes for 1987 to 1999, including the pre-2000 taxes Sahli had bought in the second scavenger sale, "be extinguished and merged into the tax deed to be issued to [him, Elzey]." *Elzey*, 389 Ill. App. 3d. at 399-400. Then, as now, the first sentence of section 22-40(b) provided: " 'If taxes for years prior to the year or years sold are or become delinquent subsequent to the date of sale, the court shall find that the lien of those delinquent taxes has been or will be merged into the tax deed grantee's title ***.' " (Emphasis omitted.) *Id.* at 400 (quoting 35 ILCS 200/22-40(b) (West 2006)).

¶ 58    The respondent, the county treasurer and *ex officio* collector, objected to this motion by Elzey. *Id.* The respondent argued that, under section 22-40(a), " 'all forfeitures and sales which occur[red] subsequent to the [tax deed petitioner's] sale' [had to] be redeemed prior to [the petitioner's] obtaining an order for [a] tax deed." *Id.* at 401 (quoting 35 ILCS 200/22-40(a) (West 2006)). Applying that quoted language from section 22-40(a), the respondent maintained that because the sale to Sahli was subsequent to the sale to Real Management (Elzey's predecessor), Elzey had to redeem the sale to Sahli in order to obtain a tax deed. *Id.*

¶ 59    Unpersuaded by the respondent's argument, the trial court granted Elzey's motion to merge the 1987 to 1999 taxes into the tax deed to be issued to him. *Id.*

¶ 60    The respondent appealed, and the First District reversed the trial court's judgment. *Id.* at 399. Here is why. The language of section 22-40(a) clearly provided that a tax deed might be issued only after certain requirements were met—including the redemption of all forfeitures

- 11 -

and sales that occurred subsequent to the sale to the petitioner (*id.* at 401-02)—and section 22-40(a) "[made] no exception for subsequent sales incorporating prior years' taxes" (*id.* at 402). Because " 'no such order [finding the merger of a lien] [was to] be effective until a tax deed ha[d] been issued and timely recorded' " (*id.* (quoting 35 ILCS 200/22-40(b) (West 2006))), "section 22-40(b) ha[d] no effect until the tax deed [was] issued, *i.e.*, until after the petitioner ha[d] redeemed all subsequent sales, including *** the *** scavenger tax sale" to Sahli (*id.* at 402-03).

¶ 61    So, the merger of a lien cannot happen until *after* the county clerk issues the tax deed, and the issuance of a tax deed presupposes the prior redemption of all subsequent sales and the resulting extinguishment of liens founded on those sales. A nonexistent lien cannot be merged into the tax deed grantee's title.

¶ 62                    E. Fairness and Plausibility in Statutory Interpretation

¶ 63    In construing a statute, a court may presume that the legislature did not intend absurdity, inconvenience, or injustice. *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 40 (2001). Plaintiff argues that by declining to construe section 22-40(b) as bestowing the right to a refund, we fail to give effect to that presumption.

¶ 64    Plaintiff reasons as follows. A prudent person, when deciding whether to buy the 2010 taxes, would have taken into account the total investment that likely would be necessary to ultimately acquire a tax deed. This prospective tax purchaser could have reasonably expected to pay four additional years of taxes to obtain a tax deed (assuming, of course, that the property owner did not redeem the taxes). Because the 2010 taxes were $12,681.94, it would have been reasonable to forecast that a total investment of approximately $64,000 would be necessary ($12,681.94 x 5 years = $63,409.70). The postsale declaration of a sale in error for a year prior to 2010 throws this forecasting into uncertainty and, therefore, makes tax sales less attractive than they otherwise would be. Budgeting would be problematic. Prospective tax-sale purchasers would never know for sure what they were getting into. Plaintiff complains: "Because of the sale in error granted for the 2008 taxes and the enormous interest and penalties added to the tax, an additional $188,085.12 [citation] was required to be paid by [plaintiff] to obtain a tax deed[,] for a total of $251,619.12." Plaintiff "was in a position of either paying all of the subsequent taxes or losing the taxes that it had already paid." In the view of plaintiff and the trial court, "denying the merger and sale in error would likely have a disastrous effect on the tax purchase system in the long term if an innocent tax purchaser cannot reasonably rely upon their ability to pursue an investment without fear that a subsequent huge tax liability may be imposed through no fault of its own."

¶ 65    Actually, though, plaintiff never became *liable* for the tax delinquencies that arose after the tax sale to plaintiff. A "liability" is "a legal obligation or responsibility enforceable by civil remedy or criminal punishment." *Loman v. Freeman*, 229 Ill. 2d 104, 121 (2008). Paying the taxes for 2010 did not subject plaintiff to an *enforceable legal obligation* to pay the taxes for 2011, 2012, 2013, 2014, and 2008. The truth is, plaintiff *chose* to pay the taxes for those additional years.

¶ 66    Plaintiff complains of being put in a tough spot: plaintiff had to "either [pay] all of the subsequent taxes or los[e] the taxes that it had already paid." But the taxes plaintiff had already paid were only the 2010 taxes, $12,681.94. The additional, as-of-yet unpaid taxes, for 2011, 2012, 2013, 2014, and 2008, totaled $238,871 ($12,146 for the 2011 taxes + $12,679 for the

2012 taxes + $12,922 for the 2013 taxes + $13,534 for the 2014 taxes + $188,085.12 for the 2008 taxes = $238,871). Would it make sense to pay $238,871 to avoid losing $12,681.94? More likely, plaintiff paid this additional amount because plaintiff thought the tax deed would be worth it.

¶ 67 If plaintiff did not think the tax deed would be worth the additional amount, plaintiff could have filed an application for a sale in error instead of going forward with the proceedings to obtain a tax deed. Citing *Thornton, Ltd. v. Rosewell*, 72 Ill. 2d 399 (1978), plaintiff remarks in its brief that the grounds listed in section 21-310 for the declaration of a sale in error are "not exclusive." As Fitzgerald likewise says, on the authority of *Thornton*, "[t]he circumstances in which a sale may be set aside as in error are not defined by statute; the statute merely lists the circumstances in which the clerk must declare a sale to be in error [citations]. The court may set aside the sale on equitable grounds." Fitzgerald, *supra* § 58:203, at 283-84. Plaintiff would have had a strong equitable case for a sale in error and a refund of the $12,681.94 that plaintiff had paid for the 2010 taxes. The additional cost of $188,085.12 to obtain a tax deed was indeed, as plaintiff argues to us, unforeseeable. It was unexpected and completely out of plaintiff's control that Vista obtained a sale in error, with the consequence that the 2008 taxes, together with penalties and interest, became delinquent again. Surely, a court of equity would have been understanding of plaintiff's predicament—it would have seen that plaintiff, through no fault of its own, had suffered a nasty surprise—and the court would have granted an application by plaintiff for the declaration of a sale in error. Certificate of purchase No. 583 would have been canceled, and plaintiff would have been refunded its $12,681.94. See 35 ILCS 200/21-310(d) (West 2014). Apparently, however, plaintiff did not want its certificate of purchase to be canceled and its $12,681.94 to be refunded. Rather, plaintiff wanted a tax deed, ultimately for a price substantially less than that which section 22-40(a) dictated. Plaintiff wanted a rebate—with interest.

¶ 68 To interpret section 22-40 as collecting money with one hand for no purpose other than to return it with the other hand, augmented by interest, would contradict the presumption against absurdity. See *Burger*, 198 Ill. 2d at 40. Having required, in subsection (a) (35 ILCS 200/22-40(a) (West 2014) (effective June 1, 2015)), the redemption of all sales that occurred after the sale to the petitioner, the legislature would not require, in the next subsection (35 ILCS 200/22-40(b) (West 2014) (effective June 1, 2015)), the refund of the redemption money with interest.

¶ 69                                    III. CONCLUSION
¶ 70 For the foregoing reasons, we reverse the trial court's judgment.

¶ 71 Reversed.