2024 IL App (1st) 230974-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DIVISION
November 4, 2024

Nos. 1-23-0974 and 1-23-1012 (cons.)

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* APPLICATION OF THE COUNTY TREASURER and *ex officio* County Collector of Cook County, Illinois, for Order of Judgment and Sale of Lands and Lots Upon Which All or a Part of the General Taxes for Three or More Years are Delinquent | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County<br><br>Nos. 21-COTD-2210<br>     21-COTD-2227 |
| (Blue Ocean 21-1, LLC, and White Cedar Properties LLC, Petitioners-Appellants v. Maria Pappas, Cook County Treasurer and *ex officio* Cook County Collector, Respondent-Appellee). | ) ) ) ) ) ) | The Honorable Maureen Ward Kirby and Nichole C. Patton, Judges Presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Pucinski and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:*  In this consolidated appeal of two cases involving petitions for the issuance of a tax deed, the appellate court affirms the trial courts' denial of motions to merge certain tax liens into the tax deed grantee's title.

¶ 2    This is a consolidated appeal of two cases in which the purchaser of delinquent taxes at a scavenger sale sought issuance of a tax deed. The petitioners in the two cases are now Blue Ocean 21-1, LLC, and White Cedar Properties LLC, which are assignees of Newline Holdings, LLC, which was the original purchaser in both cases and the petitioner throughout most of the trial court

proceedings. In both cases, Newline Holdings filed motions to merge into its tax deed titles certain liens that were for taxes that had been purchased at prior sales which were later vacated as sales in error, thereby resulting in previously paid taxes becoming delinquent again after the scavenger sale purchase by Newline Holdings. The trial courts in both cases denied the motions on the grounds that section 22-40(b) of the Property Tax Code (35 ILCS 200/22-40(b) (West 2022)) does not authorize the lien merger sought because the taxes that became delinquent again involved tax years subsequent to the tax years sold to Newline Holdings in the scavenger sale at issue. The petitioners' appeal challenges this ruling of the trial courts. For the reasons that follow, we affirm the trial courts' judgments.

¶ 3                                    BACKGROUND

¶ 4         In July 2019, the Cook County Collector (Collector) held a scavenger sale of delinquent property taxes that included (1) tax years 2007-2013 for a residential condominium unit located at 5142 South King Drive, Unit A1, in Chicago (King Drive property)[1] and (2) tax years 2011 through the first installment of the 2015 taxes for a residential condominium unit at 14635 Greenwood Road, Unit 303, in Dolton (Greenwood property). Newline Holdings was the winning bidder and obtained certificates of purchase of these delinquent taxes for both these properties. Neither property was redeemed within the statutory period of redemption. On August 11, 2022, Newline Holdings filed the instant petitions seeking issuance of tax deeds for both properties.

¶ 5         The following factual situation existed with respect to both the King Drive property and the Greenwood property. First, both the King Drive property and the Greenwood property had other years' delinquent taxes sold at sales occurring prior to the July 2019 sale at issue in this case. However, in both instances, the delinquent taxes sold at those prior sales were for tax years after

_____

[1] This property also has an address of 5150 South King Drive, Unit A1, Chicago, Illinois.

the tax years sold at the July 2019 sale. As to the King Drive property, its delinquent taxes for 2014 had been sold in a July 2016 sale; thereafter, the purchaser of those 2014 taxes also paid the taxes on that property for the 2015-2017 tax years, along with the second installment of 2018 taxes, in anticipation of eventually obtaining a tax deed. As to the Greenwood property, its delinquent taxes for the second installment of 2015 were sold in an April 2017 sale, after which time the purchaser also paid its taxes for 2016-2018 in anticipation of obtaining a tax deed.

¶ 6 Second, after the July 2019 sale of the two properties' delinquent taxes to Newline Holdings, the earlier sales—involving taxes for years subsequent to the tax years purchased by Newline Holdings—were vacated as sales in error. See 35 ILCS 200/21-310 (West 2020). Refunds were thus issued for the previously paid taxes. As to the King Drive property, this occurred on February 13, 2020. As to the Greenwood property, it occurred on November 9, 2020. The effect of this was to render the properties tax delinquent again, thereby reinstating tax liens against the two properties for those delinquent taxes that had been sold in error. See 35 ILCS 200/21-75 (West 2020); 11 John P. Fitzgerald, Illinois Real Property §§ 58:203–58:204 (Feb. 2024 update).

¶ 7 As a result of the above circumstances, Newline Holdings filed motions in both cases requesting that the tax liens for those taxes that had become delinquent again after the July 2019 scavenger sale be merged into the tax deed titles for the respective properties when issued. The statutory authority cited for such tax lien merger was section 22-40(b) of the Property Tax Code. 35 ILCS 200/22-40(b) (West 2022).

¶ 8 The Collector filed objections to the requested merger of tax liens in both cases. It argued *inter alia* that the clear and unambiguous language of section 22-40(b) authorized the merger of liens for delinquent taxes into a tax deed only when taxes for "years prior to the year or years sold" at the scavenger sale become delinquent thereafter. See *id.* Accordingly, because the tax liens that

Newline Holdings sought to merge were for tax years subsequent to the years sold at the July 2019 scavenger sale, no statutory existed that allowed for such merger. Instead, it argued, the statute required all subsequent years' delinquent taxes that had become due and payable after the July 2019 sale to be paid as a prior condition to the issuance of the tax deeds. See *id.* § 40(a).

¶ 9        In its reply, Newline Holdings argued in general that the merger of liens for subsequent years' taxes was appropriate because the taxes remained unsold and should have been included within its certificate of purchase at the 2019 scavenger sale but for the prior sale and payment. It also argued that the Collector's position undermines the purpose of the scavenger sale process because it subjects tax purchasers to unforeseeable liability for the full amount of subsequent years' taxes that had been previously purchased but would otherwise have been mergeable if they had been offered at the July 2019 sale.

¶ 10        The trial courts in both cases denied the motions for tax lien merger. In identical orders, the trial courts found that section 22-40(b) "allows for the merger of taxes for 'years prior to the year or years sold' and the years in the present case sought to be merged are tax years that came after the years purchased in this matter by Petitioner." The trial courts also adopted and incorporated a trial court ruling from a different case that resolved this issue on essentially the same basis.

¶ 11        Following this ruling, Newline Holdings paid the open taxes on the properties. It also assigned its certificate of purchase of delinquent taxes for the King Drive property to White Cedar Properties, and it assigned its certificate of purchase of delinquent taxes for the Greenwood property to Blue Ocean 21-1. The trial court then entered orders directing the issuance of tax deeds to these assignees. Timely notices of appeal were then filed in both cases, and this court granted an agreed motion to consolidate the appeals.

¶ 12                                                ANALYSIS

¶ 13 On appeal, the petitioners argue that the trial courts erred by denying their motions to merge tax liens. They argue that the trial courts "focused on a narrow reading" of section 22-40(b) of the Property Tax Code (35 ILCS 200/22-40(b) (West 2022)), specifically the fact that the years' taxes for which they sought lien merger were subsequent to the years' taxes sold at the scavenger sale. Instead, they argue, the trial courts should have considered also the broader legislative intent behind the scavenger sale process, governed by section 21-145 of the Property Tax Code (*id.* § 21-145), which is to provide a device of last resort to restore tax-delinquent properties to tax-productive status after other available methods of tax collection have been exhausted. See *In re Application of the County Collector*, 155 Ill. 2d 520, 523-24 (1993). They argue that the interpretation of section 22-40(b) advanced by the Collector and adopted by the trial courts significantly undermines this broader purpose for which scavenger sales exist.

¶ 14 The petitioners' argument presents an issue of statutory interpretation. The cardinal rule of interpreting statutes, to which all other canons and rules are subordinate, is to ascertain and give effect to the intent and meaning of the legislature. *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311 (2001). A court's determination of the legislature's intent must always begin with the statutory language itself. *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 164 (1998). If a statute's language is plain, clear, and unambiguous, and if the legislative intent can be ascertained therefrom, then that language must prevail and be given effect by the courts without resort to other aids of interpretation. *Wisnasky-Bettorf v. Pierce*, 2012 IL 111253, ¶ 16. Thus, only where a statute is ambiguous on its face should a court look to other statutes as an aid to interpretation. *Kozak v. Retirement Board of Firemen's Annuity & Benefit Fund of Chicago*, 95 Ill. 2d 211, 219 (1983). Statutory interpretation presents a question of law that we review *de novo*. *Brunton v. Kruger*, 2015 IL 117663, ¶ 24.

¶ 15 Section 22-40 of the Property Tax Code (35 ILCS 200/22-40 (West 2022)) governs the issuance of tax deeds, including the merger of liens for delinquent taxes into a tax deed grantee's title.[2] Section 22-40(a) provides that if the redemption period expires and the property has not been redeemed, and if certain additional conditions are satisfied, one such condition being that "all taxes *** which became due and payable subsequent to the sale have been paid," then the court "shall enter an order directing the county clerk on the production of the certificate of purchase and a certified copy of the order, to issue to the purchaser or his or her assignee a tax deed." *Id.* § 22-40(a). Section 22-40(b) allows the court to merge certain tax liens into the tax deed title, providing: as follows:

> "If *taxes for years prior to the year or years sold are or become delinquent subsequent to the date of sale, the court shall find that the lien of those delinquent taxes has been or will be merged into the tax deed grantee's title* if the court determines that the tax deed grantee or any prior holder of the certificate of purchase, or any person or entity under common ownership or control with any such grantee or prior holder of the certificate of purchase, was at no time the holder of any certificate of purchase for the years sought to be merged. If delinquent taxes are merged into the tax deed pursuant to this subsection, the court shall enter an order declaring which specific taxes have been or will be merged into the tax deed title and directing the county treasurer and county clerk to reflect that declaration in the warrant and judgment records; provided, that no such order shall be effective until a tax deed has been issued and timely recorded. Nothing contained in this Section shall relieve any owner liable for delinquent property taxes under this Code from the payment of the taxes that have

---

[2] Effective January 1, 2024, the language of the statutes at issue in this appeal underwent significant amendment. See Pub. Act 103-555, § 5 (eff. Jan. 1, 2024) (amending, *inter alia*, 35 ILCS 200/22-40 and 35 ILCS 200/21-145). We consider the language of these statutes as it existed at the time of the trial courts' rulings, and neither party argues that the amendments have any bearing on the question presented.

been merged into the title upon issuance of the tax deed." (Emphasis added.) *Id.* § 22-40(b).

¶ 16    As indicated above, the trial courts below ruled that this issue was controlled by the plain language of the first sentence of section 22-40(b), which only authorizes the merger of liens of "taxes for years prior to the year or years sold" that are or become delinquent subsequent to the date of the sale. *Id.* The trial courts found this to a clear and unambiguous requirement. The trial courts in both cases reasoned that because the tax liens that Newline Holdings sought to merge were for tax years subsequent to the tax years that were sold and purchased at the July 2019 scavenger sale, they were not for "taxes for years prior to the year or years sold" and were ineligible for merger into the tax deed titles for this reason.

¶ 17    We agree with the trial courts that the plain language of section 22-40(b) is controlling on the question presented. Quite simply, the taxes that were rendered delinquent again when sales-in-error occurred following the July 2019 scavenger sale were not "taxes for years prior to the year or years sold." As to the King Drive property, the latest year of taxes sold was 2013, and the taxes that reopened, which Newline Holdings sought to merge, were for the subsequent tax years of 2014 and after. Likewise, as to the Greenwood property, the latest year of taxes sold was 2015, and the taxes that reopened for which merger was sought were for 2015 and after. Under the plain language of section 22-40(b), which we find clear and unambiguous, liens on these taxes did not qualify for merger because they pertained to taxes that did not satisfy this statutory requirement. Thus, instead of being mergeable into the title, these were "taxes *** which became due and payable subsequent to the sale" that either Newline Holdings or its assignees were required to pay as a condition of obtaining issuance of the tax deed. *Id.* § 22-40(a); see *In re Application of County Treasurer (Welch)*, 2017 IL App (4th) 170003, ¶ 39-40 (previously purchased taxes for which a sale in error is declared and a refund issued subsequent to a later tax sale become due and payable

for purposes of section 22-40(a)).

¶ 18    Based upon our finding that the language of section 22-40(b) demonstrates a plain, clear, and unambiguous expression of the legislature's intent as to which years' taxes are eligible for merger into a tax deed grantee's title, we are largely precluded from considering the petitioners' argument that we should resolve this issue by looking to the broader legislative intent behind the scavenger sale process. As stated above, only where a statute is ambiguous on its face may we look to other statutes as an aid to interpretation. *Kozak*, 95 Ill. 2d at 219. "When a statute is clear, there is no reason for courts to search for the motives of the legislature to justify giving the statute a meaning different than the words of the statute indicate." *Id.* at 220.

¶ 19    For completeness, however, we summarize the petitioners' arguments as follows. Their argument does not cite or rely on any specific language of the statute governing the scavenger sale process. See 35 ILCS 200/21-145 (West 2022). In other words, they make no argument that any language of section 21-145 conflicts with any language of section 22-40(b). Instead, their argument is grounded in the notion that the legislature's broader intent in creating the scavenger sale process is to provide a legal mechanism of last resort to restore tax-delinquent properties to tax-productive status after other available methods of tax collection have been exhausted. See *In re Application of the County Collector*, 155 Ill. 2d at 523-24; accord *In re Application of the County Treasurer and ex officio County Collector of Cook County*, 2020 IL App (1st) 190722, ¶ 14.

¶ 20    The petitioners argue that this broader legislative purpose is "completely undermined" by an interpretation of section 22-40(b) as disallowing the merger into a tax deed title of taxes that reopen after a scavenger sale, that are not resold, and that "would have been included in the Scavenger Sale amount paid by the Petitioners had [the taxes] not been held by another certificate holder at the time of the [July 2019] Scavenger Sale." They emphasize that the "only reason additional years

of delinquent taxes were not included in the scavenger certificate" that Newline Holdings obtained in July 2019 was because "the taxes were part of an annual certificate open at the time of the Scavenger Sale and subsequently reopened after Petitioners' acquisitions of their scavenger certificates." They go on to argue that their position is supported by "the statutory framework regarding what the Collector is required to sell in a Scavenger sale," *i.e.*, "all properties with three or more years of taxes outstanding, with the expressed intent to reform the tax rolls for the property." They assert that the opening bid in a scavenger sale is set below the amount of the tax delinquency "to ensure that a substantial tax balance does not prevent the property from returning to the tax roll."

¶ 21 They contend that an interpretation of section 22-40(b) that "ensures that delinquent taxes previously sold which reopen and have not been resold can be merged" would be "a powerful tool to clean up property that falls into years of delinquent tax distress." They argue that "the goals of utilizing the Scavenger Sale to remove properties from multiple years of delinquency" and returning them to productive taxpaying status is served "by merging years that reopen subsequent to their acquisition." By contrast, they argue, the approach taken by the Collector and the trial courts, which narrowly focuses on the tax years that were in fact sold at the sale when determining which taxes are mergeable into the tax deed title, does not advance the legislative intent behind scavenger sales of bringing significantly distressed properties back into tax-productive status. Instead, this legal mechanism of last resort is "undermined by a cycle of repetitive sales in error" that leads to a "never-ending cycle of taxes going delinquent and reopening."

¶ 22 Finally, the petitioners assert that under the interpretation of section 22-40(b) advanced by the Collector and adopted by the trial court, tax purchasers would be remiss to purchase delinquent taxes at a scavenger sale with the ever-looming possibility that tax years might later open for which

they would be liable to pay. They argue that section 22-40(b) should operate to resolve this problem "by giving tax purchasers an avenue for relief when those taxes do open up and have not been resold." They add that if the taxes at issue in this case had been included in the July 2019 scavenger sale, they "would have paid no more money for them than what was already offered."

¶ 23    The arguments set forth above by the petitioners are not arguments about how to interpret section 22-40(b) in accordance with principles of statutory interpretation. Instead, we find them to be policy arguments about what taxes should be mergeable into a tax deed title to best serve the overall purpose for which scavenger sales exist. As we have explained, when we apply the well-established principles of statutory interpretation, it is clear that the issue on appeal must be resolved based on the plain and unambiguous statutory language by which the legislature has allowed for merger into a tax deed title only of liens for "taxes for years prior to the year or years sold" that become delinquent subsequent to the date of a sale. 35 ILCS 200/22-40(b) (West 2022). The petitioners' arguments that are essentially questions of policy are more appropriately directed to the legislature than to the courts. *In re A.A.*, 2015 IL 118605, ¶ 27. The authority of this court to interpret statutes does not give us any power to rewrite a statute or to depart from its plain language (*People ex rel. Director of Corrections v. Booth*, 215 Ill. 2d 416, 426 (2005)), which is essentially what the petitioners are asking us to do. Where, as here, a statute is clear and unambiguous, our role is to enforce it as written. *Id.*

¶ 24    We also address the petitioners' argument that the question of whether the taxes at issue in this case are mergeable into the tax deed titles is affected by the fact that those taxes that became delinquent again subsequent to the July 2019 scavenger sale were not then resold to a different tax purchaser. This is a component of the petitioners' larger argument set forth above, which we have already rejected. *Infra* ¶¶ 19-22. However, the petitioners contend that authority for this specific

aspect of their argument exists in the holding of *In re Application of the County Treasurer (Elzey)*, 389 Ill. App. 3d 398 (2009).

¶ 25 We do not find *Elzey* to be of aid to the petitioners in this case. *Elzey* involved a materially different factual scenario and legal issue than that presented here. *Elzey* involved a petition for tax deed by the purchaser of delinquent taxes for years 2000-2001, sold in a 2003 scavenger sale; subsequent to that sale, at a 2005 scavenger sale, delinquent taxes on the same property for years 1987-1999 were sold to a different tax buyer. *Id.* at 399-400. Thus, the later-sold taxes in *Elzey* ostensibly qualified for lien merger under section 22-40(b) because they were " 'for years prior to the year or years sold' " at the 2003 scavenger sale, and the trial court thus granted a petition for merger of those taxes into the petitioner's tax deed title. *Id.* at 400-01 (quoting 35 ILCS 200/22-40(b) (West 2006)). The Collector appealed, arguing that the petitioner was required to pay the prior years' taxes as precondition to obtaining issuance of the tax deed, because one of the conditions that must be satisfied before a tax deed may issue is that " 'all *** sales which occur subsequent to the sale have been redeemed.' " *Id.* (quoting 35 ILCS 200/22-40(a) (West 2006)). This court agreed with the Collector's argument and reversed the trial court's lien merger. The court interpreted section 22-40 and held that the requirements of section 22-40(a), including that all sales occurring subsequent to the sale at issue be redeemed, prevailed over the allowance of a lien merger under section 22-40(b). *Id.* at 402. The court reasoned that section 22-40(a) states that " 'all' subsequent sales must be redeemed" and "makes no exception for subsequent sales incorporating prior years' taxes." *Id.* The court further stated that "section 22-40(b) has no effect until the tax deed is issued, *i.e.*, until after the petitioner has redeemed all subsequent sales, including in the present case the 2005 scavenger tax sale." *Id.* at 402-03.

¶ 26 In the present case, the petitioners argue that *Elzey* supports the proposition that the

availability of lien merger turns on whether taxes that become delinquent following a scavenger sale are thereafter resold. From this proposition, they argue that because the taxes that became delinquent following the July 2019 scavenger sale were not resold to a different tax buyer, they are eligible for lien merger under section 22-40(b). We disagree with the petitioners' contention that *Elzey* stands for this proposition or supports their argument. Instead, as we explained above, the availability of lien merger and the outcome of this case is controlled by the plain language of section 22-40(b).

¶ 27 Finally, the petitioners raise an argument in their reply brief on appeal that the operative phrase "year or years sold" in section 22-40(b) is ambiguous (and therefore we should consider their arguments about the broader legislative purpose of the scavenger sale process as a basis for resolving this ambiguity). The petitioners assert that "year or years sold" is an undefined phrase that could refer either (1) to the tax years explicitly listed on a certificate of purchase in a tax sale or (2) to the "years which were eligible to be included in a particular sale." We find this argument by the petitioners to be forfeited on the basis that they raised it for the first time in their appellate reply brief, thus allowing the Collector no opportunity to respond to it. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued [in an appellant's opening brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). However, even if we overlook this forfeiture, we find this argument to be without merit. As used in section 22-40(b), the phrase "taxes for years prior to the year or years sold" plainly refers to the years' delinquent taxes that were actually sold a tax sale, not to tax years that might or could have been sold at a tax sale but were not in fact sold.

¶ 28            CONCLUSION

¶ 29 For the foregoing reasons, the judgments of the trial courts in both cases of this consolidated

appeal are affirmed.

¶ 30          Affirmed.